Filed 1/25/16  In re E.V. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re E.V. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E064088 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J258637 & J258638) |
| v. | OPINION |
| A.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

1

A.M. (mother) is the mother of two young children, E.V. and A.V., the subjects of this dependency proceeding. Mother appeals from the juvenile court's orders denying her petitions under Welfare and Institutions Code[1] section 388. For the reasons set forth below, we shall affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL HISTORY

San Bernardino County Children and Family Services (CFS) was notified that mother left her two children, E.V. (age seven), and A.V. (age two) with the paternal grandparents before Christmas, and as of January 15, 2015, neither mother nor C.V.[2] (father) had returned to check on the children or pick them up. Prior to this time, mother and the children were homeless; father was incarcerated.

Initially, E.V. told the social worker that she wanted to return to mother. E.V. stated that mother and father (collectively, "parents") argued. She reported that she had seen father hold a knife to mother's throat. She did not know the whereabouts of mother.

Before E.V. lived with the paternal grandparents, she lived in various motels and hotels. She witnessed parents using drugs and watched her mother roll joints. Although E.V. denied being abused, she reported that she was scared sometimes when parents fought. She stated that she attended school but could not remember her teacher's name or the name of her school.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] C.V. is the presumed father of the children.

2

The paternal grandfather (PGF) told the social worker that mother asked him to pick up the children after school on December 22, 2014, and keep them for three days. Mother was homeless and wanted to look for an apartment. PGF reported that parents called once to speak with the children, and another time to curse PGF for keeping the children away from them. PGF gave the social worker mother's telephone number and last known address in Victorville.

A social worker contacted mother. They scheduled an appointment in CFS's Victorville office. On the morning of the appointment, mother cancelled claiming illness. Despite the social worker's attempts to reschedule the appointment, mother failed to respond.

On January 7, 2015, a police officer interviewed E.V. She told the officer that she witnessed alcohol use and domestic violence. E.V. also witnessed mother having sex in the home with father and other men. E.V. stated that mother "drinks" a lot and would leave beer around the house. E.V. did not drink the beer because she did not like the taste. She also told the police officer that she had not been to school for about a month but would like to return.

On February 4, 2015, CFS filed section 300 petitions on behalf of each child. The petitions alleged failure to protect, no provision for support, and abuse of sibling. (§ 300, subds. (b), (g) & (j).)

In the detention report, the social worker stated that mother, who was 35 years old at the time of the report, had a child welfare history. She had lost two older children to adoption through the dependency system in 2004. E.V. also had a previous dependency

case initiated January 27, 2010, through August 20, 2010: On January 23, 2010, mother tested positive for marijuana after giving birth to a baby; the baby was adopted through a private adoption agency. Parents received family maintenance services at that time. Mother also had two other children placed under a legal guardianship with maternal grandmother. Mother voluntarily gave legal guardianship to maternal grandmother since mother knew she could not care for the two children due to her substance abuse problem.

At A.V.'s birth, mother tested positive for methamphetamine. From August 17, 2012, through September 6, 2013, both E.V. and A.V. were found to be dependents of the court. Mother received reunification services during that time. In addition to the three dependency cases prior to the current case, mother also had 15 other referrals between 1999 and 2013 for general neglect, emotional abuse, physical abuse, and severe neglect.

At the detention hearing on February 5, 2015, mother failed to appear. The court detained the children and ordered supervised visitation with parents once a week for two hours. Parents were to confirm their visits 24 hours in advance. PGF had no contact information regarding the parents, except for the fact that they lived in Victorville.

In the jurisdiction/disposition report dated February 26, 2015, CFS recommended that the juvenile court sustain the petitions and that the children be placed in out-of-home care with no family reunification services for mother or father. Mother met with the social worker to discuss the allegations; mother denied them. The social worker advised mother of the jurisdiction/disposition hearing and mother agreed to attend. Mother could not provide an address because she was homeless; she did provide her current phone number.

4

PGF told the social worker that he intervened in the past because of parents' substance abuse and domestic violence. PGF did not know parents' whereabouts. He was concerned about the safety and well-being of the children since they needed a stable environment. PGF was also concerned with E.V.'s inappropriate language and comments about sex and drugs.

E.V. wanted to remain with her grandparents. She felt safe since no one was fighting and/or doing drugs. E.V. was also excited to return to school. She did not attend school when she lived with parents because they moved frequently.

Mother called the social worker to schedule an appointment. She denied drug use and agreed to an on-demand drug test. Mother, however, failed to attend the appointment. The phone number that she had provided to the social worker was disconnected.

Mother's criminal substance abuse history dated back to 2001. She had multiple arrests. Mother's abuse of drugs caused her children to be removed from her. On December 26, 2014, mother was arrested; she had a loaded syringe in her vehicle and additional paraphernalia, which tested positive for methamphetamine, was discovered. Mother had a hidden baggie of methamphetamine in her bra and a glass pipe in her underwear underneath the waistband.

CFS recommended the setting of a selection and implementation hearing since the family's prognosis was poor. Parents had failed to make themselves available for interviews with CFS and services offered by CFS. Parents did not visit with the children during this time. Parents had a long history of substance abuse, domestic violence,

5

instability, and criminal activity. Parents could not maintain sobriety and provide a safe environment for the children. Their current whereabouts were unknown.

On February 26, 2015, at the jurisdiction/disposition hearing, mother failed to attend. The juvenile court found the petitions' allegations to be true, and that both E.V. and A.V. came within section 300, subdivisions (b), (g) and (j). The court ordered the children removed from parents and placed in CFS's care and custody. The court denied services to mother, and ordered weekly supervised visits for two hours.[3] The court then set the matter for a six-month status review hearing on August 26, 2015.

On July 2, 2015, the court filed a section 387 petition on behalf of the children. The paternal aunt was no longer able to care for the children.[4] The police had been to her home once and CFS had been there twice. Although the aunt could not prove it, she suspected that mother and/or father were responsible for initiating the visits to the aunt's home. The aunt claimed that the allegations against her were false.

On July 6, 2015, at the section 387 detention hearing, mother was present. The court ordered the children removed from the paternal aunt, and ordered supervised visitation for mother on a weekly basis for two hours.

On the same date, mother filed section 388 petitions requesting reunification services, which were denied by the court at the jurisdiction/disposition hearing. Mother attached a substance abuse progress report showing three negative test results on June 8,

---

[3] CFS initially recommended no services to father. The recommendation, however was revised in court since there were no grounds to bypass services to him.

[4] The record does not indicate when the children were placed in aunt's home.

6

24, and 30, 2015. Mother also included a letter from Deanna Freeland, the program manager of Grace House Sober Living Homes. Freeland stated that mother had moved into Grace House on May 30, 2015, and tested negative. Mother was also following the rules, attending her 12-Step meetings, and had a sponsor. Mother's AA/NA attendance sheet indicated that she had attended 13 meetings between June 8 and June 24, 2015. Mother also attended 17 Tumbleweed Hall meetings between May 3 and June 24, 2015. The attendance sheets, however, failed to indicate the nature of these meetings. Mother had also enrolled in perinatal services at High Desert Child, Adolescent, and Family Services Center.

The juvenile court summarily denied the petitions since mother failed to state new evidence or a change of circumstances, and the proposed change in the orders failed to promote the best interests of the children.

On July 27, 2015, mother filed her notice of appeal of the denial of her section 388 petitions.

## DISCUSSION

A.    THE JUVENILE COURT PROPERLY DENIED MOTHER'S SECTION 388 PETITIONS

In her section 388 petitions, mother requested the court to order reunification services; the court summarily denied her request. On appeal, mother contends that the juvenile court erred in summarily denying her section 388 petitions.

"To prevail on a section 388 petition, the moving party must establish that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the

7

best interests of the child." (*In re J.T.* (2014) 228 Cal.App.4th 953, 965.) "Under section 388, a party 'need only make a prima facie showing to trigger the right to proceed by way of a full hearing.' [Citation.] The prima facie showing is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. [Citation.] In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.] The petition must be liberally construed in favor of its sufficiency." (*In re J.P.* (2014) 229 Cal.App.4th 108, 127.) "Section 388 thus gives the court two choices: (1) summarily deny the petition or (2) hold a hearing." (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912; contra, *In re G.B.* (2014) 227 Cal.App.4th 1147, 1158, fn. 5 [allowing argument on whether the mother had made a prima facie case in a section 388 petition "benefitted her by giving her the opportunity to establish a record supporting her request for an evidentiary hearing"].)

"[C]onclusory claims are insufficient to require a hearing. Specific descriptions of the evidence constituting changed circumstances is required. 'Successful petitions have included declarations or other attachments which demonstrate the showing the petitioner will make at a hearing of the change in circumstances or new evidence.'" (*In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1348.) "If a petitioner could get by with general, conclusory allegations, there would be no need for an initial determination by the juvenile court about whether an evidentiary hearing was warranted. In such circumstances, the decision to grant a hearing on a section 388 petition would be nothing more than a pointless formality." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.)

"We review a summary denial of a hearing on a modification petition for abuse of discretion. [Citation.] Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*In re A.S.* (2009) 180 Cal.App.4th 351, 358.) Any error by a juvenile court in denying a hearing on a section 388 petition may be deemed harmless where the petitioner fails to identify any additional evidence the petitioner could have presented at an evidentiary hearing, which would have established a right to reunification services. (*In re G.B.*, *supra*, 227 Cal.App.4th at pp. 1161-1165.)

      1.    *MOTHER FAILED TO ESTABLISH A PRIMA FACIE SHOWING OF CHANGED CIRCUMSTANCES*

On July 6, 2015, in her section 388 petitions, mother requested reunification services. The court denied reunification services at the jurisdiction/disposition hearing on February 26, 2015, because mother had failed to make a reasonable effort to treat her drug problem. Mother had already been provided with three sets of services in the previous 11 years, and still could not control her drug use. Mother had services before her parental rights were terminated in 2004 for two of her children who were eventually adopted. The dependencies were initiated because mother and both children, who were born one year apart, tested positive for drugs.[5] A dependency case was initiated in 2010

---

    [5] As discussed *ante*, Mother also voluntarily gave legal guardianship for two other children to maternal grandmother because mother could not care for the children because of her substance abuse problem.

for E.V. because mother tested positive for marijuana after giving birth to another child, who was adopted through a private agency. The court ordered 10 months of family maintenance services. In 2012, a third dependency case was initiated when A.V. was born and mother again tested positive for drugs, this time methamphetamine. Both A.V. and E.V. became dependents of the court and mother received 13 months of reunification services.

This current case is the fourth time mother has been involved in a dependency proceeding. Despite all the drug rehabilitation services mother received during the prior 11 years, she was still not rehabilitated when this case was commenced. Mother, however now argues that her three negative drug tests and enrollment in drug rehabilitation programs, which occurred less than one month prior to the filing of her section 388 petitions, were an indication of her changed circumstances of drug rehabilitation and recovery. Mother's efforts in the one month prior to the filing of her petitions fail to show changed circumstances in mother's rehabilitation efforts. It does not even show changing circumstances. It simply shows that mother had *started* to make changes.

In *In re Kimberly F.* (1997) 56 Cal.App.4th 519, the court doubted that "the parent who loses custody of a child because of the consumption of illegal drugs and whose compliance with a reunification plan is incomplete during the reunification period" could "ever show a sufficient change of circumstances to warrant granting a section 388 motion." (*Id.* at p. 531, fn. 9.) The court went on to state that "[i]t is the nature of

10

addiction that one must be 'clean' for a much longer period than 120 days to show real reform." (*Ibid.*)

Nonetheless, mother argues that if she had "waited for . . . a longer period of sobriety, a section 388 filed at a later time period could . . . not serve the child's best interest." Hence, mother claims that since she used her short time effectively, the court should have granted her a hearing on her petitions. What mother fails to address is that she waited four months prior to engaging in services. Meanwhile, the children were not with either parent, and neither mother nor father visited the children. Here, mother was 35 years old, lost custody of her children due to her drug addiction, and received court-ordered services three separate times during the prior 11 years. Thereafter, mother was still using drugs, and the children at issue in this appeal were detained. Again, as explained *ante*, a few weeks of drug treatment and three clean tests do not constitute a prima facie showing of changed circumstances.

Based on the above, we find that mother did not establish a prima facie showing of changed circumstances. Therefore, the juvenile court did not abuse its discretion in summarily dismissing mother's section 388 petitions.

2.  *MOTHER FAILED TO ESTABLISH A PRIMA FACIE SHOWING THAT GRANTING HER PETITIONS WOULD BE IN THE CHILDREN'S BEST INTERESTS*

Even if the court could find a prima facie showing of changed circumstances, in order to have a hearing on a section 388 petition, mother must show that the best interests of the children would be promoted by the proposed change. (*In re Elizabeth M.* (1997)

11

52 Cal.App.4th 318, 323.) Whether or not the proposed change serves the child's best interests is the "critical question." (*In re Edward H.*, *supra*, 43 Cal.App.4th at p. 594.)

According to the California Supreme Court, the goal of assuring stability and continuity is a "primary consideration" in any custody determination. The court stated: "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

In this case, mother claims that providing services to her would be in the best interest of the children because (1) father was receiving services; and (2) the bypass provisions of section 361.4, subdivision (b), only apply if a permanent plan is in place. Mother's arguments are without merit.

The bypass provisions reveal the Legislature's recognition that providing services may not be justified in certain circumstances. Offering services to a parent described in the bypass provisions would be an "unwise use of governmental resources." (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744.) Section 361.4, subdivision (b)(1), the provision applicable in this case, addresses the recidivism and the use of limited resources.

In this case, as provided in detail above, mother received services three times during the previous 11 years. Mother, however, continued to engage in drug-abusive behavior, which made her unable to parent E.V. and A.V. The fact that father received services is not relevant to mother's continued drug abuse. Providing services to mother only after a very brief time of being drug free would not serve the best interests of the children. Here, although E.V. initially told the social worker she wanted to return to mother, after E.V. lived in a stable home environment she told the social worker that she wanted to remain with her caretakers because she felt safe and there was no fighting or drug use. Moreover, E.V. wanted to attend school and was excited to return to school. She did not attend school when living with mother because they were homeless. Mother failed to address any of these issues in her petitions.

If the court granted mother's petitions, she would have engaged in services for less than two months before the court had to make the determination whether the children would be returned to mother under the statute. At the six-month hearing, the court would have had to consider whether mother could overcome her drug addiction, secure adequate housing for herself and her two children, and secure gainful employment. Given mother's history of recidivism over the prior 11 years, there was not a substantial probability that the children would be returned to her within six months. Therefore, to provide services to mother for two months would not have been in the children's best interests, and would be a waste of resources.

Mother's substance abuse problems coupled with her inability to provide a safe and stable environment for the children led to their dependencies. This case is E.V.'s

third dependency experience in seven years, and A.V.'s second experience in two years. Stability and continuity are in the children's best interests, but mother's petitions failed to establish a prima facie case that providing her with services would further these goals.

In sum, mother failed to make a prima facie showing that vacating the section 366.26 hearing and ordering her reunification services was in the best interests of E.V. and A.V. We cannot say that the juvenile court's summary denial of mother's section 388 petitions exceeded the bounds of reason. In fact, *granting* the petitions under the facts of this case may have been an abuse of discretion.

## DISPOSITION

The juvenile court's orders denying mother's section 388 petitions are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                          J.

We concur:

HOLLENHORST _____
                    Acting P. J.

KING _____
                            J.

14