Filed 8/7/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | B251780 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK79533) |
| Plaintiff and Respondent, | |
| v. | |
| JASMINE M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Marilyn Martinez, Commissioner. Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Respondent.

_____

Jasmine M. (mother) challenges a juvenile court order terminating jurisdiction over her son, J.T., and ordering regular visitation for J.T.'s paternal grandmother. Mother contends the visitation order impermissibly infringed on her fundamental parenting rights under the Fourteenth Amendment to the United States Constitution. Mother also argues the trial court abused its discretion when it denied her petition under Welfare and Institutions Code section 388,[1] requesting that the court terminate or modify the order for J.T. to visit paternal grandmother. We affirm the trial court orders.

## FACTUAL AND PROCEDURAL BACKGROUND

In light of the limited nature of mother's appeal, we only briefly summarize the underlying facts of the dependency proceedings. In December 2009, the juvenile court asserted dependency jurisdiction over then one-year-old J.T. under section 300, subdivision (b). Mother was 16 years old at the time; she was also a dependent of the court. The court found mother left J.T. with his maternal grandmother without making appropriate plans for his care, and mother's whereabouts were unknown. In October 2010, the juvenile court sustained a supplemental petition alleging mother failed to consistently reside in maternal grandmother's home, in violation of juvenile court orders. The court further sustained allegations that mother frequently left maternal grandmother's house with J.T. and their whereabouts were unknown, and that mother failed to permit the case social worker to have sufficient access to J.T.

From April 2010 to June 2010, and again from August 2010 through September 2012, J.T. was placed with his paternal grandmother.[2] During this period mother

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

[2]    In September 2010, father, Aaron S., began serving a state prison sentence for robbery. In April 2011, the juvenile court terminated reunification services for father. Father waived his right to appear at the final hearings in this case, but he was represented by counsel who joined in J.T.'s attorney's request that the juvenile court order visits to continue with paternal grandmother after dependency jurisdiction was terminated. Father is not a party to this appeal.

2

partially complied with a reunification plan, but at times lost contact with Los Angeles County Department of Children and Family Services (DCFS) and was intermittent in visiting J.T. In September 2012, the juvenile court ordered J.T. placed with mother, under the supervision of DCFS.[3] On August 12, 2013, the juvenile court terminated dependency jurisdiction.

*Visitation with paternal grandmother*

As of September 2012, paternal grandmother was to have unmonitored overnight visits with J.T. However, in April 2013, DCFS reported mother had not made J.T. available for the visits. Mother said she did not want J.T. to visit paternal grandmother and would "fight" the court's visitation order. At a review hearing in June 2013, mother denied that she was refusing paternal grandmother visits, but indicated she wished to be present during the visits. Mother explained that she did not have a good relationship with paternal grandmother, and she expressed concern that paternal grandmother would make false allegations about her and interfere with her relationship with J.T. DCFS reported paternal grandmother had not made any false allegations about mother. DCFS also noted paternal grandmother had raised J.T. for much of his life and had "done a great job." The court ordered mother to make J.T. available for unmonitored visits with paternal grandmother; it denied as untimely mother's request for a stay of the order.

In July 2013, mother filed a section 388 petition asking the court to modify the order allowing paternal grandmother unmonitored visits. Mother argued that when the court ordered visits for paternal grandmother in September 2012, J.T. had just been returned to mother's custody after living with paternal grandmother for two years.

Following a 12-month review hearing in October 2011, mother filed an appeal in this court alleging trial court errors had violated her due process rights. We found the appeal moot and dismissed it in an unpublished opinion. (*In re J.T.* (Feb. 14, 2012, B238032) [nonpub. opn.].)

[3] DCFS briefly detained J.T. in November 2012. The court subsequently found DCFS did not have exigent circumstances to detain J.T. and ordered that the case social worker and supervising case social worker involved in the detention were not to provide any further social work on the case.

Mother argued that while visits at that time might have been important to help J.T. with the transition, the transition was now complete. Mother contended: "This visitation schedule is a burden on mother and is interfering with mother's right to exercise her parental authority. Furthermore, since the relationship between paternal grandmother and mother is strained as a result of paternal grandmother not being in agreement with mother having custody of [J.T.], forcing visitation against mother's wishes is a direct infringement on mother's fundamental right to make decisions concerning the care, custody and control of her son, and as such violates the Constitution (see [*Troxel v. Granville* (2000) 530 U.S. 57].)" Mother further argued she was concerned paternal grandmother would have a "negative influence on [J.T.'s] emotional and behavioral well being, due to the negative relationship between paternal grandmother and mother. . . . Given that mother objects to the visitation . . . pursuant to Family Code § 3104(e), there is a rebuttable presumption that the visitation of [J.T.] with his paternal grandmother is not in his best interest." Mother requested that the court limit paternal grandmother's visits to once per month for three hours, in a public setting, with mother present. The juvenile court ordered a hearing on the petition.

In a July 30, 2013 report, DCFS indicated paternal grandmother had only had one visit with J.T. since mid-June. The visit reportedly went well; J.T. said he wanted to stay with paternal grandmother instead of returning home to mother. The social worker arranged a schedule for visits to take place every Monday from 10:00 a.m. to 1:00 p.m. However, DCFS reported mother had not complied with the visitation schedule. DCFS also stated there was no indication that paternal grandmother had a negative influence on J.T.'s emotional or behavioral well-being such that restricting visitation to three hours each month would be warranted.

In August 2013, DCFS recommended that the court terminate dependency jurisdiction. The department also recommended that the court refer the matter to the family law court for "further discussion" of a visitation schedule with father and paternal grandmother. At an August 12, 2013 hearing, the court indicated it would terminate jurisdiction and grant mother full legal and physical custody of J.T., with monitored

4

visitation for father. Mother argued the court should not order visitation with paternal grandmother. As she had contended in the section 388 petition, mother asserted her relationship with paternal grandmother had deteriorated and she did not agree that paternal grandmother should have unmonitored visits. J.T.'s counsel contended there was no evidence paternal grandmother had done anything to jeopardize mother's custody of J.T., or that paternal grandmother had said anything negative to J.T. about mother. J.T.'s counsel asked that the court order visitation with paternal grandmother. Counsel for DCFS argued it would disrupt J.T.'s stability to deprive him of contact with paternal grandmother, with whom he had a very strong bond. The court ordered unmonitored visits with paternal grandmother, every other Monday from 10:00 a.m. to 1:00 p.m. The court formally denied mother's section 388 petition on the ground that the request was not in J.T.'s best interest. The court explained:

> "There is a presumption that a custodial parent's objections to a grandparent's visitation is in the best interest of a child, and the court must accord that position of the custodial parent with great weight. However, that parent's decision regarding visitation is not immune from judicial review, and I'm the judge and I've reviewed what we have here. [J.T.] is young, and he has spent a substantial part of his life in the care of his paternal grandmother. He has a positive relationship with her. He is bonded to her. She is a link to the paternal family. In fact, she is the one who was assisting [J.T.] to have a relationship with his father while the father was in custody. It clearly is in his best interest to preserve this child/grandmother relationship. . . . There hasn't been any evidence that [paternal grandmother] has attempted to interrupt or interfere with my orders that [J.T] should be in his mother's custody with family maintenance services . . . . It is not in [J.T.'s] best interest to disrupt his very strong bond with [paternal grandmother.]"

Mother timely appealed.

## DISCUSSION

I. **The Juvenile Court Did Not Violate Mother's Fundamental Parenting Rights by Issuing an Order Granting Paternal Grandmother Visitation with J.T.**

Mother contends the juvenile court a) lacked authority to order grandparent visitation; b) paternal grandmother could only secure a right to visit J.T. by filing a

petition in the family court; and c) the juvenile court's order unlawfully infringed on her fundamental parenting rights. We disagree.

**A. The Juvenile Court Was Authorized by Statute to Issue a Visitation Order**

Under section 362.4, "[w]hen the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and . . . an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child."

At least two courts have construed section 362.4 as authorizing a juvenile court to enter an order upon termination of jurisdiction that provides for visitation between the child and a nonparent. *In re Hirenia C.* (1993) 18 Cal.App.4th 504 (*Hirenia C.*), concerned requests for visitation by the appellant, the former partner of the dependent child's adoptive mother. By the time of the appeal, the adoption was finalized and the juvenile court had terminated dependency jurisdiction. The court found the appeal was not moot because, under section 362.4, a juvenile court order of visitation with a nonparent may be entered or continued after the dependent child is adopted by another person. Although the adoptive mother objected to an order granting her former partner visitation, the court noted the child had "formed a close, bonded relationship with appellant . . . . Even if there were some conflict between the parties, it would nevertheless be permissible to enter a visitation award in favor of appellant if she is able to establish a substantial parental relationship with [the child], continuation of which would be in [the child's] best interests." (*Hirenia C.*, at pp. 519-520.)

Similarly, in *In re Robin N.* (1992) 7 Cal.App.4th 1140, cited in *Hirenia C.*, the appellate court found section 362.4 authorized the juvenile court to award visitation to a "de facto parent" unrelated to the child for visitation occurring after the termination of dependency jurisdiction. The court noted that even if both parents object to visitation with a third person, the court may order it: " 'As strong as the rights of such parents must be, there may be instances in which a child would be significantly harmed by completely terminating his or her relationship with a person who has (1) lived with the child for a

6

substantial portion of the child's life; (2) been regularly involved in providing day-to-day care, nurturance and guidance for the child appropriate to the child's stage of development; and, (3) been permitted by a biologic parent to assume a parental role. The needs of the child, which are the most important consideration, may sometimes require that a visitation award be made to such a "de facto parent." ' [Citation.]" (*In re Robin N.*, *supra,* at p. 1146, italics omitted.)

We agree with these interpretations of section 362.4. Under section 362.4, the juvenile court had the authority to issue an order for post-termination visitation between J.T. and paternal grandmother. Mother suggests the juvenile court was required to refer the matter to the family law court instead of issuing a visitation order. However, mother offers no support for this contention, which directly contradicts the express authority the court has under section 362.4 to make visitation orders when the court terminates dependency jurisdiction over a minor. "By empowering the juvenile court to issue custody and restraining orders, the Legislature has expressed its belief that 'the juvenile court is the appropriate place for these matters to be determined and that the juvenile court's orders must be honored in later superior court proceedings.' [Citation.]" (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30-31.)

Further, the juvenile court was not required to apply Family Code section 3104. In non-dependency cases, grandparents may petition for visitation under Family Code section 3104, which provides, in relevant part: "(a) On petition to the court by a grandparent of a minor child, the court may grant reasonable visitation rights to the grandparent if the court does both of the following: (1) Finds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that visitation is in the best interest of the child. (2) Balances the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority. . . . (f) There is a rebuttable presumption affecting the burden of proof that the visitation of a grandparent is not in the best interest of a minor child if the parent who has been awarded sole legal and physical custody of the child in another proceeding,

7

or the parent with whom the child resides if there is currently no operative custody order objects to visitation by the grandparent."**4**

However, due to the separate and distinct purposes of the juvenile and family courts, many Family Code provisions do not apply in dependency proceedings. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 678 [dependency proceedings are governed by their own rules and statutes; unless otherwise specified, Civil Code and Code of Civil Procedure requirements do not apply].) Thus, for example, in *In re Jennifer R.* (1993) 14 Cal.App.4th 704, the court concluded Civil Code section 4600.5 (now Family Code section 3080), which established a presumption that joint legal custody between parents is in the best interest of a minor child when the parents have agreed to joint custody, did not apply to a juvenile court issuing custody orders upon termination of dependency jurisdiction. (*Id.* at pp. 711-712.) Similarly, in *In re Chantal S.* (1996) 13 Cal.4th 196, 206-208 (*Chantal S.*), the California Supreme Court considered whether a juvenile court issuing a visitation order upon termination of dependency jurisdiction is required to apply Family Code section 3190, which permits a family court to require parents involved in a custody or visitation dispute to participate in counseling for not more than one year. The court, adopting much of the reasoning of *Jennifer R.*, concluded Family Code section 3190 did not apply in a juvenile court proceeding. (*Chantal S.,* at p. 207.)

This case is no different. While grandparents' rights to visitation are governed by Family Code provisions in a family law matter, nothing in Family Code section 3104 indicates it similarly governs visitation in a dependency context. (See *In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1098 [statutes not part of the Welfare and Institutions Code do not apply to juvenile court proceedings unless they are expressly applicable; juvenile court had no authority to make orders concerning child support].) Mother's

---

**4**     In *Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, the court held that under a related provision (Fam. Code, § 3102), a grandparent seeking to overcome the presumption that a fit parent will act in the best interest of the child must do so by clear and convincing evidence. (*Rich v. Thatcher,* at pp. 1180-1181.)

argument that a juvenile court may only award a grandparent visitation after applying Family Code section 3104, is undermined by section 361.2, subdivision (i), which requires the juvenile court to consider grandparent visitation when a child is removed from his or her parents, and by section 362.4, which allows the court, on its own motion, to make visitation orders when terminating jurisdiction over a minor, without any mention of presumptions contained in the Family Code that apply to a family court's custody or visitation determinations.

Moreover, it is inconsistent with the dependency system's purpose of protecting children who have been abused, abandoned, or neglected, and requires consideration of the totality of a child's circumstances, to require that the juvenile court apply statutory procedures or presumptions regarding grandparent visitation that are intended for use in the family court, which is "designed to provide presumptively fit parents a forum in which to resolve, inter alia, private disputes about custody of and visitation with children." (*Chantal S.*, at pp. 201, 206, 208; see *In re Claudia E.* (2008) 163 Cal.App.4th 627, 635-636 [a statute outside of the Welfare and Institutions Code is not necessarily barred from dependency proceedings, but courts should determine whether the statute is consistent with the overall purposes of the dependency system].) Section 362.4 was the proper source of authority for the juvenile court's order for visitation following the termination of dependency jurisdiction. (*Chantal S.,* at pp. 206-207.)

### B. The Visitation Order Did Not Infringe on Mother's Fundamental Right to Parent

Mother also asserts the visitation order, issued over her objection, infringed on her right to make decisions concerning the care, custody, and control of her child. In support of her argument she relies on *Troxel v. Granville* (2000) 530 U.S. 57 (*Troxel*). In *Troxel*, the United States Supreme Court considered the constitutionality of a Washington state statute that permitted "any person" to petition a superior court for visitation at any time, and authorized the court to grant visitation rights whenever doing so " 'may serve the best interest of the child.' " (*Troxel,* at p. 60.) A plurality of the court found a visitation order issued under this "breathtakingly broad" statute and allowing grandparent visitation

9

over the objection of the children's sole parent, was an unconstitutional infringement of the parent's fundamental right to make decisions concerning the care, custody, and control of her children. (*Id.* at pp. 67, 71.)

The plurality opinion noted that in the case before it, the trial court's order was not "founded on any special factors" justifying State interference with the mother's fundamental right to make child-rearing decisions. There was no allegation or finding that the mother was an "unfit parent," and "there is a presumption that fit parents act in the best interests of their children." (*Troxel*, at p. 68.) The court indicated that "so long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." (*Id.* at pp. 68-69.) The plurality opinion explained the problem was not that the trial court had intervened, but that when it did so it gave "no special weight" to the mother's determination of her children's best interests, and indeed appeared to apply the opposite presumption. The opinion concluded that to pass constitutional muster, "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." (*Id.* at p. 70.) Because the trial court applied the opposite presumption and failed to "accord significant weight to [the mother's] already having offered meaningful visitation to the [grandparents]," it was clear that the "case involve[d] nothing more than a simple disagreement between the [trial court] and [the mother] concerning her children's best interests." (*Id.* at p. 71.) As applied, the statue was unconstitutional.[5]

_____

[5] Courts in this state have since found that *Troxel* did not render Family Code provisions regarding nonparent visitation unconstitutional. (See e.g., *In re Marriage of Harris* (2004) 34 Cal.4th 210, 225-227.) The Court of Appeal in *Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 302, explained the path California courts have taken since *Troxel*: "Appellate courts have recognized that in appropriate circumstances a court may impose a visitation order against a custodial parent's wishes, and that such orders are not per se invalid. [Citations.] A custodial parent's decisions regarding visitation are entitled

10

*Troxel* does not support mother's contentions here. Unlike a parent in a family law proceeding, mother did not have the benefit of a presumption of parental fitness. She was before the dependency court precisely because of a substantiated lack of fitness to raise J.T. Unlike in family court, " '[t]he presumption of parental fitness that underlies custody law in the family court … does not apply to dependency cases' decided in the juvenile court. [Citation.]" (*Chantal S., supra,* 13 Cal.4th at p. 201.) When the juvenile court makes custody or visitation orders as it terminates dependency jurisdiction, it does so as a court with "a special responsibility to the child as *parens patriae* and [it] must look to the totality of a child's circumstances when making decisions regarding the child." (*Ibid.*) This remains true in the juvenile court's final orders issued before the court terminates jurisdiction. Thus, in *Hirenia C.*, the court not only concluded that if the juvenile court found it would be in the child's best interests to have visitation with the adoptive mother's former partner it could enter an order to that effect, even as it was closing its file, the court further suggested "it would likely be reversible error for the juvenile court to refuse to hear evidence which is relevant to the formulation of an appropriate 'exit' order regarding visitation." (*Hirenia C.*, *supra*, 18 Cal.App.4th at p. 520.)

Although mother may have regained the presumption of parental fitness after dependency jurisdiction was terminated, while the matter was still before the juvenile dependency court it had a special responsibility in issuing its last orders in the role of *parens patriae* to look at the totality of J.T.'s circumstances, including the maintenance of relationships with other adults with whom he had a strong bond. (See *In re Jennifer R., supra,* 14 Cal.App.4th at p. 713 [rejecting argument that termination of dependency jurisdiction necessarily restored presumption of parental fitness where determination that risk to child was eliminated was premised upon the existence of the custody and

_____

to presumptive validity and must be accorded ' "special weight," ' but they are not immune from judicial review. [Citation.]"

visitation order].) The plurality opinion's analysis in *Troxel* hinges on the fact that a *fit* parent is entitled to a presumption that she is acting in her child's best interest in objecting to grandparent visitation. Mother here was involved in a dependency proceeding in which she was not entitled to such a presumption. (*In re John W.* (1996) 41 Cal.App.4th 961, 972.) Thus, we disagree that the juvenile court's visitation order unconstitutionally infringed on mother's fundamental right to make decisions regarding J.T.'s care, custody, and control. (See also *In re Marriage of Harris, supra,* 34 Cal.4th at p. 227 [noting that nothing in the *Troxel* decision suggests that an order for grandparent visitation that is supported by one parent infringes upon the parental rights of the other parent].)

We also note that while neither *Troxel* nor Family Code section 3104, subdivision (f) was applicable as the juvenile court issued orders terminating dependency jurisdiction and ordering visitation, the court in fact acknowledged the *Troxel* standard in its decision. In explaining its ruling, the juvenile court explicitly stated: "There is a presumption that a custodial parent's objections to a grandparent's visitation is in the best interest of a child, and the court must accord that position of the custodial parent with great weight." Thus, even if the juvenile court was required to give special weight to mother's objection to court-ordered visitation in order to avoid unconstitutionally infringing on mother's fundamental parenting rights, we would find no error since the court appeared to do just that. While a court ruling on a grandparent's petition for visitation must accord the parent's objection special weight, the court may still, consistent with *Troxel*, grant visitation to a grandparent if the presumption that the parent is acting in the best interest of the child is overcome. (See e.g., *Hoag v. Diedjomahor* (2011) 200 Cal.App.4th 1008, 1016, 1018-1020 [presumption overcome where father admitted grandparent visitation was in the best interest of his children and court found father's concerns about grandparent visitation were neither reasonable nor credible].)

## C.  The Juvenile Court Did Not Abuse its Discretion in Denying Mother's Section 388 Petition

Finally, the juvenile court did not abuse its discretion when it denied mother's section 388 petition, seeking a modification of the court's visitation order.  In the section 388 petition, mother asked that the juvenile court limit paternal grandmother's visits to once per month for three hours, in a public setting, with mother present.  On appeal, mother summarizes her request in the petition as requesting a change so that she might exercise her parental authority in determining the extent of the contact with paternal grandmother.

To prevail on a section 388 petition, the moving party must establish that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child.  (*In re A.A.* (2012) 203 Cal.App.4th 597, 611.)  "The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion."  (*Id.* at p. 612.)  In this case, even assuming mother demonstrated changed circumstances, we would not find the juvenile court abused its discretion in determining the proposed change to the visitation order would not promote J.T.'s best interests.  The evidence was substantial that J.T. had a strong bond with paternal grandmother.  He had lived with her for over two years, and visits with her went well.  Paternal grandmother had also facilitated J.T.'s continued contact with his incarcerated father.  There was also evidence that mother was not willing to voluntarily allow J.T. to have contact with paternal grandmother.  Despite a court order, mother frequently failed to follow through with scheduled visits.  The court could reasonably determine a court order was necessary to protect and facilitate the relationship between J.T. and paternal grandmother.

On the other hand, there was no evidence supporting mother's position that, if allowed to visit J.T. unsupervised, paternal grandmother would make false allegations about mother, or that she would engage in behavior that would have a negative impact on J.T.  Consistent with the juvenile court's responsibility to consider the totality of the circumstances when evaluating J.T.'s best interests, the juvenile court could, within the

confines of applicable legal principles and based on the evidence before it, reasonably determine it was not in J.T.'s best interests to either allow mother to determine visitation without a court order, or to severely limit the visitation between J.T. and paternal grandmother to brief visits once per month with mother present.

## DISPOSITION

The juvenile court orders are affirmed.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P. J.

We concur:


RUBIN, J.


GRIMES, J.

14