Filed 9/14/20  In re H.R. CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re H.R., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E074574 |
| Plaintiff and Respondent, | (Super.Ct.No. J272272) |
| v. | OPINION |
| S.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant, S.G., the maternal grandmother (MGM), filed a Welfare and Institutions Code section 388[1] petition requesting additional visitation with H.R. (the minor), which the juvenile court denied. On appeal, MGM contends the court erred in denying her petition. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

In August 2017, the juvenile court detained the minor on a juvenile dependency petition alleging that his mother had substance abuse issues, mental health issues, and led a transient lifestyle.[3] Mother had given birth to the minor while testing positively for amphetamines, marijuana, opiates, and benzodiazepines. The minor was placed with MGM upon his release from the hospital, where he had remained since birth as a result of ongoing withdrawal symptoms. (See *CFS v. S.G.*, *supra*, E073868.)

In March 2018, the juvenile court terminated mother's reunification services and scheduled a section 366.26 hearing after she failed to appear at any of the hearings and had not engaged in any visitation with the minor. On January 15, 2019, the court appointed MGM as the minor's legal guardian, retaining jurisdiction with authority to dismiss. (See *CFS v. S.G.*, *supra*, E073868.)

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] We take judicial notice of our nonpublished opinion in *CFS v. S.G.* (Mar. 13, 2020, E073868), from MGM's appeal of the order rescinding her guardianship. (Evid. Code, §§ 452, subd. (d), 459.) We derive much of our factual and procedural recitation from that opinion.

[3] Mother is not a party to this appeal.

2

On April 24, 2019, CFS personnel received a referral alleging general neglect of the minor by MGM. The minor had been transported to a hospital by ambulance due to a fall from the kitchen counter during which he sustained a head injury. The minor was diagnosed with a skull fracture, blood clot, and possible contusion; he was admitted to the hospital for two days. According to the social worker: "The hospital . . . was concerned that [the minor] has been to the Emergency Room on multiple occasions due to falls. The hospital staff reportedly suspected that [MGM] may be overwhelmed [and] may need additional assistance, as she has not been able to [maintain] close supervision of [the minor]. The hospital reported that the child had fallen two days earlier from the bathroom sink, and it was unknown if the child was taken to the doctor at the time of the fall, and this fall was not reported to CFS." (*CFS v. S.G.*, *supra*, E073868.)

The social worker learned of two prior head injuries due to the minor falling; he had been taken to the emergency room on January 27 and June 7, 2018. CFS personnel were concerned about the frequency and severity of the minor's injuries. On May 1, 2019, after the issuance of a detention warrant, the minor was taken into protective custody. (See *CFS v. S.G.*, *supra*, E073868.)

CFS personnel filed a supplemental juvenile dependency petition alleging that MGM was unable to properly care for and supervise the minor. The court detained the minor on May 6, 2019. (See *CFS v. S.G.*, *supra*, E073868.)

In an interview on May 16, 2019, MGM denied that the minor had fallen; however, she "later admitted that [he] ha[d] fallen other times from his high chair in 2018." (*CFS v. S.G.*, *supra*, E073868.) "She stated that she did not take him to the

3

hospital/doctor at the time[] because other people were telling her that [he] was fine.  She stated that she was told, 'Kids are always falling that he is fine.'" (*Ibid*.)

The social worker observed that during visits, MGM did "not demonstrate acts of protection and supportive behaviors toward the child that are consistent with appropriate supervision." (*CFS v. S.G.*, *supra*, E073868.)  MGM was observed to not immediately intervene when the minor would climb on a chair or do something unsafe.  CFS personnel were "concerned that if [he] continues to remain in the care of [MGM], he will continue to sustain further head injur[ies], as [MGM] has shown that she is not capable of protecting and keeping him safe from harm." (*Ibid*.)

In subsequent visitation, the social worker observed that MGM had difficulty keeping up with the minor and redirecting him.  In July 2019, during a supervised visit, the minor ran into a wall because he was walking with his eyes closed while wearing MGM's sunglasses.  On the same visit, MGM "grabbed [him] aggressively and spanked him three times on the bottom and up his back because he was attempting to do a handstand for the second time during that visit." (*CFS v. S.G.*, *supra*, E073868.)  When the social worker addressed her concern about the spanking, MGM said it would not happen again.  It was noted that the minor had not fallen since being placed outside of MGM's care.  (*Ibid*.)

MGM would bring fast food for the minor when visiting.  A doctor who thereafter evaluated the minor for autism spectrum disorder recommended that fast food be removed from his diet.  The social worker subsequently suggested that MGM cease bringing fast food to the minor; the following week, she brought baked chicken, but the

4

minor did not like it: "After that, [MGM] went back to bringing French fries, which she claimed she fried although they appeared exactly like McDonald French fries. Additionally, the caregiver advised [MGM] that more than one sachet of applesauce gives [the minor] the runs. However, [MGM] continued to feed [him] more than one sachet of applesauce during the visit." (*CFS v. S.G.*, *supra*, E073868.) It was again noted that the minor had not fallen in his new placement. (*Ibid.*)

After a contested jurisdiction and disposition hearing on October 7, 2019, the court noted that it could not "overlook the number of injuries sustained [by the minor] in [MGM's] care, and I agree that I don't believe they're even as of yet all accounted for." (*CFS v. S.G.*, *supra*, E073868.) "It remains concerning to the Court that the hospital recognized that, even in a supervised setting, the grandmother struggled to meet the supervision needs of the child and, even in supervised visitation, there are concerns that she's not closely supervising the child." (*Ibid.*) The court noted that the minor never sustained injuries while being watched by MGM's neighbor or in the current caregiver's home. The court found the allegation in the supplemental petition true. (*Ibid.*)

As to disposition, the court noted that the best interest standard applied. Minor's counsel agreed with the social worker's recommendation that the court rescind the guardianship without offering services to MGM. The court observed, "as noted in the findings for jurisdiction, I do find that there was a lack of appropriate supervision, and that led directly to the child's injuries." (*CFS v. S.G.*, *supra*, E073868.) The minor has "now been out of the care of grandmother for five months. There's been no additional injuries. He's in a p[ro]spective adoptive concurrent planning home who wishes to

5

provide him permanency and, by offering services, the Court would be delaying that permanency for the chance we can resolve those issues, and that's not a pathway that's clear to the Court." (*Ibid*.)

The court also noted that MGM had declined therapy and was not currently enrolled in any parenting classes: "So I can't find that it's in the child's best interest to delay permanency on the chance that services may eliminate those issues when there's no indication that the minor has struggled via the [detention]." (*CFS v. S.G.*, *supra*, E073868.) The court terminated the guardianship, removed the minor from MGM's custody, and set the section 366.26 hearing. (*Ibid*.)

MGM appealed, contending insufficient evidence supported the juvenile court's true finding on the allegation in the supplemental petition and its termination of the guardianship. MGM also filed a petition for extraordinary writ. By opinion dated March 13, 2020, we affirmed the order terminating the guardianship and denied the petition. (See *CFS v. S.G.*, *supra*, E073868.)

On November 21, 2019, while the appeal of the rescindment of the guardianship was pending, CFS personnel requested that the court reduce MGM's visitation with the minor from once weekly for two hours to once monthly for one hour. During a visit on November 12, he had sustained scratches to his face and jaw when MGM pulled him out from under a table. She then spanked the minor, even after the previous social worker had advised her not to do so.

MGM continued to bring fast food to the visits with the minor despite the doctor's contrary recommendation and multiple requests to desist by the social worker.[4] MGM stated that she had made the food at home and did not care what the doctor recommended. The social worker also reported increasing hostility by MGM toward the minor's caregivers. The caregivers reported that she often argued with them during visitation, told the minor not to look at them or go to them for comfort, and followed them out to the parking lot after visits. Due to the negative affect her behavior had upon the minor, the social worker recommended a reduction in visitation. On December 6, 2019, the court ordered reduced visitation as recommended.

On December 19, 2019, MGM, in propria persona, filed a section 388 petition requesting the court reinstate weekly visitation for two hours. She asserted as changed circumstance or new evidence that visitation had been unilaterally restricted. She further asserted that the requested change in visitation was in the minor's best interest because he had been raised by her "for the first 20 months of his life. He belongs with me." On December 23, 2019, the court summarily denied the request, finding it did not state new evidence or a change of circumstances, would not promote the minor's best interest, the minor was "pending permanency," and the minor had been removed from MGM's care.

---

[4] The doctor's recommendation reads: "I recommend [the minor] minimize, if not entirely eliminate, fast food from his diet. This is a general recommendation to all pediatric patients. I especially recommend this for patients with (presumed) autism to prevent a restrictive preference for fast foods that could lead to future health complications."

7

## II. DISCUSSION

MGM contends the court erroneously denied her section 388 petition. We disagree.

"To prevail on a section 388 petition, the moving party must establish that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child." (*In re J.T.* (2014) 228 Cal.App.4th 953, 965.) "Under section 388, a party 'need only make a prima facie showing to trigger the right to proceed by way of a full hearing.' [Citation.] The prima facie showing is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. [Citation.] In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.] The petition must be liberally construed in favor of its sufficiency." (*In re J.P.* (2014) 229 Cal.App.4th 108, 127.)

"We review a summary denial of a hearing on a modification petition for abuse of discretion. [Citation.] Under this standard of review, we will not disturb the decision of the trial court unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*In re A.S.* (2009) 180 Cal.App.4th 351, 358.)

Here, contrary to MGM's assertions, she failed to establish a prima facie case of either new evidence/changed circumstances or that the requested change would be in the minor's best interest. MGM's assertion that her visitation had been unilaterally restricted was neither new evidence nor a changed circumstance, i.e., she proposed no new

evidence nor asserted any change of circumstance since the court's order reducing her visitation. Moreover, MGM's statement that the minor had been raised by her for the first 20 months of his life does not invariably mean that increased visitation with her would be in his best interest. Thus, the court acted within its discretion in summarily denying the petition.

## III. DISPOSITION

The order denying MGM's section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
Acting P. J.

We concur:

MILLER_____
J.

CODRINGTON_____
J.

9