Filed 12/18/23  In re Z.R. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Z.R., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B329482 (Super. Ct. No. 22JD-00277, 22JD-00277-001) (San Luis Obispo County) |
| SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>C.R.,<br><br>    Defendant and Appellant. | |

C.R. (Mother) appeals orders of the juvenile court denying her modification petition, declaring that her minor child Z.R. is adoptable, and terminating her parental rights.  (Welf. & Inst.

Code, §§ 388, 366.26, subd. (c)(1).)[1]  We conclude that sufficient evidence supports the court's orders and affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Mother, the parent to eight children, has a long history with the child dependency system, including for neglect and abuse of her children, chronic drug abuse, and criminality.  Prior to the filing in Z.R.'s dependency proceeding, Mother's seven other children had been removed from her care at different times.  Mother's parental rights to three children (Z.R.'s half-siblings) were later terminated and those children have been adopted.  In 2019, Mother reunified with three of her remaining children (Z.R.'s full siblings) and a fourth child has now reached adulthood.

In July 2021, Mother was arrested and charged with child abuse following her physical acts (grabbing by the throat, striking in the face, and threatening with a screwdriver) against two of her minor sons.  As a result, another dependency action was filed and family reunification services terminated regarding these two minor sons.  The father of one son later received full legal and physical custody and the other son was placed in a legal guardianship.

In April 2022, Mother pleaded nolo contendere to child abuse and received a grant of four years of formal probation with a condition of 94 days' confinement in county jail.

In August 2022, the San Luis Obispo Department of Social Services (Department) received a report alleging that Mother was abusing drugs daily and neglecting infant Z.R.  A Department social worker spoke with Mother who then agreed to drug testing.

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

Mother missed testing on one occasion and tested positive for methamphetamine on two other occasions. Further, between August 16, 2022, and September 19, 2022, Mother was unable to provide a urine sample for testing on three occasions, failed to appear to test on one occasion, and gave a urine substitute on another occasion. Mother also failed to regularly attend Drug and Alcohol Services group meetings.

*Jurisdiction and Disposition*

On September 27, 2022, the Department filed a dependency petition pursuant to Welfare and Institutions Code section 300, subdivision (b)(1), alleging that Mother failed to protect infant Z.R. due to her chronic substance abuse of methamphetamine. The following day, the juvenile court removed Z.R. from Mother's care and set a jurisdiction hearing for October 13, 2022. Since her September 28, 2022, detention, Z.R. was placed with a maternal relative who now intends to adopt her.

Mother and her attorney appeared at the jurisdiction hearing and Mother submitted on the Department's petition. The juvenile court sustained the allegations of the petition and set a disposition hearing for November 10, 2022. Prior to the disposition hearing, Mother entered 90-day residential drug treatment. Mother tested negative for drugs during her residential treatment and expressed interest in remaining drug-free. She also consistently visited Z.R. and interacted with her positively and appropriately. Based upon Mother's progress in rehabilitation, the Department recommended that Mother receive reunification services. Z.R.'s attorney disagreed with this recommendation and a contested disposition hearing was then scheduled.

3

At the December 14, 2022, disposition hearing, the Department social worker, a drug and alcohol counselor, and Mother testified. Following the receipt of testimony and Department reports, the juvenile court decided to bypass reunification services to Mother in part based upon her failure to reunify with three of Z.R.'s half-siblings. (§ 361.5, subd. (b)(10)(A).) The court found by clear and convincing evidence that reunification services were not in Z.R.'s best interests. In ruling, the juvenile court judge stated: "[B]ased on the history, based on how much [Mother] needs to overcome, I just don't see a reasonable likelihood the services are going to be successful; . . . that she'll benefit from them. And then, of course, the competing interest is the desire to provide permanency to the child." The court then set a permanent plan hearing.

Mother sought an extraordinary writ vacating the juvenile court's order denying reunification services and setting a permanent plan hearing. She also sought reinstatement of reunification services, visitation, and return of custody of Z.R. We denied her petition for relief in an unpublished opinion. (*C.R. v. Superior Court of San Luis Obispo County* (Apr. 18, 2023, B325166).)

*Mother's Section 388 Petition*

On March 17, 2023, Mother filed a section 388 petition requesting that the juvenile court order reunification services for six months. In support of her petition, Mother provided a certificate of completion of residential drug treatment. Mother requested a change in previous court orders due to her continued sobriety, mental health treatment, therapy, and employment. Mother asserted that she could now provide a safe and loving home for Z.R. with whom she was strongly bonded.

4

The Department contested Mother's section 388 petition due to its concerns that she could not sustain her sobriety and treatment services in view of nearly two decades of extensive substance abuse and criminality. The Department stated that it was in Z.R.'s best interests to achieve permanency through adoption and noted that the infant had lived half of her young life in foster care.

*Combined Sections 388 and 366.26 Hearing*

The Department filed a section 366.26 report recommending that Mother's parental rights be terminated and Z.R. found adoptable. The Department noted that Z.R. entered the dependency with significant development delays and a diagnosis of failure to thrive. Z.R. continued to struggle with communication and emotional skills likely due to previous neglect by Mother.

On May 22, 2023, the juvenile court held a combined sections 388 and 366.26 hearing. Mother and the Department social worker testified. Mother testified regarding her sobriety since October 2022, her commitment to remaining sober, and her current employment.

The juvenile court commended Mother for her recent reformation but stated that a 20-year history of drug use is significant to overcome, and that seven months of sobriety is simply too short to establish long-term sobriety.

At the conclusion of the hearing, the juvenile court found that Mother had established changing, but not changed, circumstances and it denied her modification petition. The court also found that Z.R. was adoptable and it terminated Mother's parental rights. The court found that the beneficial parental

5

relationship exception to adoption did not apply. (§ 366.26, subd. (c)(1)(B)(i); *In re Caden C.* (2021) 11 Cal.5th 614.)

Mother appeals and contends that the juvenile court abused its discretion by: 1) denying the section 388 modification petition, and 2) not applying the beneficial parental relationship exception to adoption. Father did not appear in the proceedings and is not a party to this appeal.

*DISCUSSION*

*I.*

Mother argues that the juvenile court erred by denying her modification petition because she established changed circumstances and the best interests of Z.R. She asserts that findings otherwise are not supported by substantial evidence. Mother relies upon *In re J.M.* (2020) 50 Cal.App.5th 833 [juvenile court erred by denying modification petition concerning infant where mother reformed, evidentiary hearing occurred, and infant's counsel joined in the petition].) She adds that the court abused its discretion by applying an incorrect legal standard, i.e., that Mother must show completely changed circumstances.

A petition to change or modify a juvenile court order pursuant to section 388 must factually allege: 1) changed circumstances or new evidence to justify the requested order, and 2) the requested order is in the minor's best interests. (§ 388, subds. (a)(1) & (b).) The petitioner bears the burden of proof on each issue by a preponderance of evidence. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48, overruled on other grounds by *In re Caden C., supra,* 11 Cal.5th 614. 636, fn. 5.) The change of circumstances supporting the modification request must be material. (*In re N.F.* (2021) 68 Cal.App.5th 112, 120.)

The juvenile court must liberally construe the modification petition in favor of sufficiency. (Cal. Rules of Court, rule 5.570(a); *In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310.) On review, the appellate court reviews denial of a section 388 petition for an abuse of discretion. (*In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

The juvenile court did not abuse its discretion by denying Mother's section 388 petition because Mother's recent sobriety reflects changing, not changed, circumstances. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.) Mother's rehabilitation must be considered in view of her 20-year history of drug abuse, criminality, repeated participation in services, and relapses into drug abuse. When so viewed, Mother's seven-month reformation is insufficiently substantial to establish changed circumstances.

Moreover, Mother did not establish that it was in Z.R.'s best interests that the juvenile court order reunification services. Z.R., an infant with development delays who failed to thrive in Mother's care, lived only 9 months with Mother. She has lived longer now in her foster/adoptive home. Mother has had approximately 20 years of Department referrals, multiple voluntary family maintenance cases, and five prior dependency cases. Mother gave birth to twin babies in 2014 while addicted to methamphetamine. Mother has previously attained sobriety through services but continues to relapse. The two decades of child welfare history as well as the issues that existed at the time of Z.R.'s removal, speak to the seriousness of Mother's drug addiction and the difficulty she has experienced in attaining lasting rehabilitation. The court's denial of the modification petition was not an abuse of discretion.

7

*II.*

Mother contends that the juvenile court erred by not analyzing each element of the beneficial parent exception to adoption. She adds that the court's findings are not supported by sufficient evidence. Mother asserts that Z.R. would benefit from continuing their relationship to such a degree that Z.R. would be harmed by termination of parental rights.

Section 366.26, subdivision (c)(1)(B), requires the juvenile court to terminate parental rights if it finds by clear and convincing evidence that a child is likely to be adopted, unless the court finds a compelling reason for determining that termination would be detrimental to the child due to an enumerated statutory exception. (*In re Caden C.*, *supra*, 11 Cal.5th 614, 629.) The beneficial parental relationship exception of section 366.26, subdivision (c)(1)(B)(i), requires a showing by a preponderance of the evidence that the parent has regularly visited the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child. "[T]he exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child." (*Caden C.*, at p. 630.)

Application of the beneficial parental relationship exception rests upon factual determinations and is reviewed for substantial evidence. (*In re Caden C.*, *supra*, 11 Cal.5th 614, 630.) The "ultimate decision" that termination would be harmful, however, is discretionary and reviewed for an abuse of discretion. (*Ibid.*) The parent bears the burden of establishing the three elements of the exception: 1) regular visitation and contact as permitted; 2) a

8

relationship, the continuation of which would benefit the child; and 3) termination of parental rights would be detrimental to the child. (*Id.* at p. 631, 636.) Ultimately, the juvenile court must decide "whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home." (*Id.* at p. 632.) What the court must determine "is how the child would be affected by losing the parental relationship – in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Id.* at p. 633.) There is no requirement that the juvenile court make specific findings regarding each element of the exception. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156.)

Mother did not meet her evidentiary burden to establish that her relationship with Z.R. was sufficiently compelling to outweigh the legal preference for adoption. Although Z.R. and Mother had positive, appropriate, and loving visits, Z.R. was an infant who had lived with Mother for only nine months before her removal. (*In re Caden C.*, *supra*, 11 Cal.5th 614, 632.) During foster care, Z.R. was making progress overcoming her developmental delays and her emotional and communication issues. She also separated from Mother easily following visits. To overcome the preference for adoption and avoid termination of parental rights, the parent must show that severing the natural parent-child relationship would deprive the child of a substantial, positive, emotional attachment such that the child would be greatly harmed. (*In re G.H.* (2022) 84 Cal.App.5th 15, 25.) The emotional bond here is not the substantial, positive, emotional attachment establishing the exception to adoption. The juvenile court did not abuse its discretion by concluding that termination of Mother's parental rights would not be detrimental to Z.R. The

9

" 'exceptional circumstances' " that would allow the juvenile court to circumvent adoption were not present here.  (*Caden C.*, at p. 631.)

*DISPOSITION*

The orders are affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

10

Gayle L. Peron, Judge

Superior Court County of San Luis Obispo

_____

L. Richard Braucher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rita L. Neal, County Counsel, and Valerie Janiel, Deputy County Counsel, for Plaintiff and Respondent.