Filed 4/29/25  In re R.C. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.C., a Person Coming Under the Juvenile Court Law. | B339416<br><br>(Los Angeles County Super. Ct. No. 20CCJP02562C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>S.T.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Brett Bianco, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendant and appellant S.T. (mother) challenges the juvenile custody order (exit order) issued by the juvenile court upon termination of dependency jurisdiction over her daughter, R.C. (minor, born Aug. 2019). (Welf. & Inst. Code, § 362.4.)[1] The exit order granted mother and minor's father, Raj C. (father),[2] joint legal custody of minor; father sole physical custody; and monitored visits for mother. Mother contends that the court abused its discretion by ordering her visitation with minor be monitored.

We affirm.

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Father is not a party to this appeal. We refer to mother and father, collectively, as the parents.

## BACKGROUND[3]

### I. *Prior Dependency History*

In August 2020, the juvenile court sustained a section 300 petition filed on behalf of minor based on the parents' history of domestic violence; mother's mental and emotional problems; mother creating a detrimental and endangering situation for minor while under the influence of alcohol, including mother feeding minor flower petals and threatening to throw minor's great-grandmother off a balcony; and the parents' substance abuse issues, including mother's alcohol abuse. A year later, in August 2021, the court terminated its jurisdiction and released minor to mother.

In September 2022, the juvenile court sustained another section 300 petition based on the parents' domestic violence and father's substance abuse. In March 2023, the court terminated its jurisdiction over minor, released minor to mother, and granted father monitored visits.

### II. *September 2023 Exercise of Dependency Jurisdiction*

On July 17, 2023, DCFS filed a third dependency petition seeking the juvenile court's exercise of jurisdiction over minor pursuant to section 300, subdivision (b)(1) (failure to protect). The petition alleged that mother had "a history of substance abuse including marijuana and [was] a current abuser of alcohol," rendering her incapable of providing regular care for minor. On

---

[3] Respondent Los Angeles County Department of Children and Family Services (DCFS) filed a motion requesting that we incorporate or, in the alternative, take judicial notice of the appellate record in mother's prior appeal in this dependency matter, appeal No. B334592, which was dismissed as abandoned. We hereby grant the request for judicial notice. (Evid. Code, §§ 452, subd. (d), 459.)

several occasions, mother was under the influence of alcohol while minor was in her care. Mother's substance abuse endangered minor's physical safety and placed her at risk of serious physical harm.

At the adjudication hearing held on September 12, 2023, the juvenile court sustained the dependency petition as pled. The court once again declared minor a dependent of the court but ordered that she remain placed with mother under DCFS supervision. The court conditioned minor's release to mother on mother "stay[ing] in her program, shelter, or in DCFS approved housing, participat[ing] in testing, abstain[ing] from all alcohol products, and complet[ing] the other conditions of her case plan."

III. *Detention; Supplemental and Subsequent Petitions*

On October 19, 2023, DCFS received a report that mother had been found intoxicated at a park. Later that day, a DCFS social worker met with mother, who appeared to still be under the influence of alcohol and exhibited slurred speech. Mother stated that she had accepted a drink from a friend without knowing what it was. She declined to submit to a drug/alcohol test that day, admitting she was currently under the influence of alcohol. When she was informed minor would be detained, mother threatened to cut herself, which led to law enforcement being called. After minor was removed from mother's arms, mother assaulted a social worker.

On October 23, 2023, DCFS filed a supplemental petition under section 387 seeking to detain minor based on mother being under the influence of alcohol to such a degree that she was unconscious, in violation of the juvenile court's order to abstain from all alcohol products.

4

On October 24, 2023, the juvenile court ordered minor detained from mother and that their visits be monitored. Minor was placed in shelter care under DCFS supervision. Shortly thereafter, minor was placed in the home of her paternal aunt in San Jose.

In a November 2023 interview, a paternal cousin reported that mother had arrived intoxicated to a visit with minor in San Jose. She returned the next day sober and was able to have a visit. The relatives then purchased a bus ticket for mother to return to Los Angeles. The paternal cousin called to check on mother and, eventually, called law enforcement after mother provided responses that prompted concerns about her mental health. Law enforcement found mother at a fast food restaurant in Bakersfield; according to restaurant staff, mother had been there for seven hours.

Mother was later transported to a psychiatric hospital. Mother's discharge summary stated that she was placed on a hold as a danger to herself and was diagnosed with "major depressive disorder, recurrent episode, severe with psychosis, principal, [a]lcohol use disorder, severe, and dependence[.]" Mother had previously declined psychotropic medication and had been hospitalized in 2015, 2017, 2020, and 2023.

On November 1, 2023, mother's therapist reported that mother did not think she was "being negligent" so long as she was not drinking in minor's presence. Mother would ask, "'I'm an adult. Why can't I drink?'"

On November 13, 2023, when asked about the incident in the park, mother stated, "'Things happened, and they took my daughter.'" Mother did not believe that she needed to participate

in an inpatient program because she had been "'prescribed . . . medication that took away [her] cravings.'"

On December 1, 2023, DCFS filed a subsequent petition under section 342 alleging that mother's mental and emotional problems and her failure to participate consistently in mental health services endangered minor.

IV. *Adjudication of Supplemental and Subsequent Petitions*

On January 16, 2024, the juvenile court sustained the supplemental and subsequent petitions as pled. The court removed minor from mother and ordered minor released to father under the condition that they remain in the paternal aunt's home. Mother was given monitored visitation with minor. The court explained, "The basis for the removal from mother is that we just have a long way to go it seems to get her both mentally stable and free from the substances—specifically alcohol."

Mother's court-ordered case plan included a full drug/alcohol treatment program with aftercare, a 12-step program, weekly drug testing, a parenting course, a domestic violence support group for victims, individual counseling, and mental health counseling. The juvenile court ordered mother to "abstain from any alcoholic beverages." The court advised mother to "strongly consider and follow through on [her] plans to get into an [in]patient treatment program because the court" would not release minor to mother or liberalize mother's visitation to unmonitored unless she was in such a program.

V. *July 2024 Status Review Report*

Minor remained in her paternal aunt's home with father. DCFS reported no safety concerns and reported that minor appeared to be happy and bonding well with father.

6

Mother continued to meet with the DCFS social worker on a monthly basis. During these visits, the social worker did not observe mother displaying any behaviors indicative of substance abuse. Mother claimed to be sober. She had not, however, enrolled in an inpatient treatment program. Mother reported that she was addressing her addiction through an outpatient program. She acknowledged the seriousness of her addiction and the consequences of losing custody of minor. Overall, mother had complied with the juvenile court's weekly drug/alcohol testing order, was participating in a 12-step program and individual counseling, and had enrolled in a domestic violence support group. No safety concerns were reported during mother's visits with minor.

DCFS recommended that dependency jurisdiction be terminated with father having sole physical custody of minor and the parents sharing joint legal custody.

VI. *Judicial Review Hearing (July 16, 2024)*

During the section 364 judicial review hearing on July 16, 2024, minor's counsel joined DCFS's recommendations, including that mother's visits remain monitored. Mother's counsel objected to notice for the hearing, as the notices indicated that DCFS was recommending unmonitored visits for mother. Mother's counsel argued that mother had taken accountability for her past actions, was consistently participating in services, and did not present any safety concerns.

After entertaining oral argument, the juvenile court found that the conditions that would justify the initial assumption of jurisdiction under section 300 no longer existed and were not likely to exist if supervision was withdrawn. Because continued supervision was no longer necessary, the court terminated its

7

jurisdiction. The court stayed the termination of jurisdiction pending receipt of an exit order providing sole physical custody to father, joint legal custody to the parents, and monitored visits for mother.

The juvenile court addressed mother as follows: "[T]he court is very impressed with the hard work you've put in to remain sober. The social worker does indicate how you are consistently and actively participating in your programs and really doing the hard work to remain sober and become an appropriate parent for [minor].

"However, I do find minor's counsel's arguments very persuasive regarding your extensive history as well as the fact that while your recent sobriety is very commendable given the long history, we are still at the early stages. So visits will remain monitored at this time. You can talk to your attorney about how to get that changed in family court should that be appropriate."

VII. *Termination of Jurisdiction*

On July 17, 2024, the juvenile court received, signed, and filed the exit order and lifted the stay on the order terminating jurisdiction. The exit order provided mother with a minimum of three monitored visits with minor each week for three hours.

VIII. *Appeal*

Mother timely filed a notice of appeal from the orders made on July 16 and July 17, 2024.

## DISCUSSION

Mother's sole contention on appeal is that the juvenile court abused its discretion by issuing an exit order that required her visits with minor be monitored.

I. *Standard of Review*

We review an exit order for an abuse of discretion and may not disturb the order "'"'unless the . . . court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.'"' [Citation.]" (*In re J.M.* (2023) 89 Cal.App.5th 95, 113.)

II. *Applicable Law*

Section 362.4 "empowers the juvenile court, if it terminates its jurisdiction over a dependent minor, to issue 'an order determining the custody of, or visitation with, the child.' (§ 362.4, subd. (a).)" (*In re C.W.* (2019) 33 Cal.App.5th 835, 862–863.) Such orders—"commonly referred to as 'exit orders'" (*In re Anna T.* (2020) 55 Cal.App.5th 870, 871–872)—"become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court. [Citation.]" (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123.)

In crafting exit orders, "it is the best interests of the child, in the context of the peculiar facts of the case before the court, which are paramount." (*In re John W.* (1996) 41 Cal.App.4th 961, 965.) "Because juvenile dependency proceedings arise when children are subject to or at risk of abuse or neglect, '[t]he presumption of parental fitness that underlies custody law in the family court just does not apply. . . . Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.' [Citations.]" (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 112.)

9

III. *Analysis*

We find no abuse of the juvenile court's "'broad discretion'" (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 112) in issuing an exit order that required mother's visits with minor be monitored.

Mother had a long history of alcohol abuse and mental health problems, which had placed minor at direct risk of serious harm on numerous occasions. When jurisdiction was terminated in the most recent of three dependency cases involving the family, mother had, at most, maintained sobriety for less than nine months. While commendable, this was a relatively short period of time compared to her years of abuse. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423–424 [200 days of sobriety insufficient to reassure the juvenile court that a relapse would not occur]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"].) And, although no concerns arose when mother visited minor in a monitored setting, mother's conduct during an unmonitored visit was untested. The court could reasonably remain concerned about minor's safety and well-being if she were to be alone with mother. Under the totality of these circumstances, ordering mother's visits with minor remain monitored was not "'"'an arbitrary, capricious, or patently absurd determination.'"'" (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 113.)

Urging reversal, mother makes several arguments that lack merit.

First, mother contends that the family's previous dependency cases were not initiated because of mother's substance abuse. This is inaccurate. In exercising jurisdiction over minor in 2020, the juvenile court sustained allegations that

10

mother had "a history of substance abuse including alcohol and marijuana abuse" and that, while mother "was under the influence of alcohol, she fed . . . [minor] numerous flower petals causing the child to choke.  Further, . . . mother threatened to throw the child's great grandmother off the 10th story balcony." These previously sustained allegations demonstrate a nexus between mother's history of alcohol abuse and risks of serious physical harm to minor.

Second, mother argues that minor was almost five years old when jurisdiction was terminated and her "age . . . did not require monitored visitation."  We disagree with any suggestion that, at only four years old, minor was old enough to independently withstand inadequate supervision during an unmonitored visit with mother.

Third, mother points to evidence that one of minor's teachers did not express concerns about mother, mother and minor appeared to be bonded, and mother was participating in parenting classes.  While this evidence supports the juvenile court's implied finding that visitation with mother was in minor's best interest, it does not demonstrate that the court abused its discretion by putting a reasonable monitoring restriction on that visitation.

Fourth, mother contends that the circumstances present when minor was detained in October 2023 were not the same as when jurisdiction was terminated in July 2024, because she was attending a 12-step program with a sponsor, was enrolled in outpatient services, and was drug testing negative.  Mother identifies no authority—nor are we aware of any—dictating that upon substantial compliance with a case plan a parent must be granted unmonitored visitation.  To the contrary, "[w]hen the

11

juvenile court makes custody or visitation orders as it terminates dependency jurisdiction, it does so as a court with 'a special responsibility to the child as *parens patriae* and [it] must look to the totality of a child's circumstances when making decisions regarding the child.' [Citation.]" (*In re J.T.* (2014) 228 Cal.App.4th 953, 963.)

Finally, mother argues that it was improper to order monitored visitation based on mere speculation that mother might relapse. However, given mother's long history of alcohol abuse and her relatively short period of recent sobriety, the court was justified in concluding that mother was "still at the early stages" of her recovery. Thus, it was reasonable for the court to continue to be concerned about mother's ability to maintain her sobriety and, thus, to place a monitoring restriction on mother's visitation.

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
    ASHMANN-GERST

We concur:


_____, J.
CHAVEZ


_____, J.
RICHARDSON

12