Filed 3/29/21  In re A.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  E.C.,  Defendant and Appellant. | E075772  (Super.Ct.Nos. J284354 &  J284355)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

I

INTRODUCTION

E.C. (Father) is the father of 16-year-old A.C. and (now) 18-year-old E.C., Jr.

(E.C.)[1]  After a contested jurisdictional and dispositional hearing, the juvenile court

ordered sole legal and physical custody of the children to P.T. (Mother).  The court also

found that Father's visits were detrimental to the children and ordered that Father have no

visitation with his boys.  Father appeals from the juvenile court's "exit order" terminating

dependency over his boys and awarding sole legal custody of them to Mother.  Father

contends the juvenile court erred in issuing the visitation exit order.  We disagree and

affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the San Bernardino County Children and

Family Services (CFS) on February 3, 2020, when a referral was received alleging

physical abuse to A.C. by Father.  It was reported that A.C. and Father had an argument,

and when A.C. tried to leave, Father grabbed A.C.'s arm, leaving finger marks.  Police

were notified and informed Father that he could not force A.C. to be with him.

The following day, the social worker spoke with A.C.'s therapist and Mother.  The

therapist reported that A.C. and Father got into an argument in a car over A.C.'s cell

phone, and that A.C. did not like visiting his father and did not want to go back with him.

---

[1]  E.C., Jr., turns 18 years old in March 2021.

A.C.'s therapist noted that A.C. still had marks and bruises on his arm. A.C.'s therapist had been providing counseling to A.C. since February 2020 to address issues related to depression and anxiety. The therapist disclosed that A.C.'s mental issues correlated to a history of poor father-son relationship and that A.C. will continue to receive weekly therapy to improve his depression and anxiety symptoms.

Mother reported that A.C. had called her very upset, stating he wanted to be picked up, and that he did not want to be with Father. She also noted that A.C. had been seeing therapists since she and Father separated in 2017 and that A.C.'s current therapist had diagnosed him with anxiety due to being forced to visit Father. Mother further stated that there was domestic violence between her and Father and that E.C., Jr., also did not want to see Father because Father was emotionally and psychologically abusive. She noted that the children had low self-esteem because of how Father talked to them, but the family law judge forced her to make A.C. visit Father. Mother also asserted that A.C. came back with some kind of mark every time he visited Father, but the family law judge justified the behaviors and sided with Father.

The social worker spoke with A.C. and E.C., Jr. A.C. confirmed the facts of the incident with Father and noted that he told his Mother he did not want to go to his father's house, but that his mother tried to encourage a relationship with his father. During the interview, A.C. began to cry and hyperventilate. E.C., Jr., reported that he did not like to visit Father and that he had not visited him in over a year. E.C., Jr., corroborated A.C.'s claim that Mother encouraged him to have a relationship with Father.

3

E.C., Jr., explained that Father had told him the only way he would not have to visit Father was if E.C., Jr., obtained employment. E.C., Jr., therefore obtained a job and had not seen Father since. He also stated that Father was physically aggressive with him and A.C., yelled at them over little things, and spoke negatively about Mother. E.C., Jr.'s eyes began to water while expressing his concerns. He disclosed that he had been in weekly therapy and was working on how to talk to Father.

When interviewed, Father denied the allegations and claimed A.C. had struck him twice, saying he was 14 years old and did not want or need to be there. Father explained that he restrained A.C. by holding his arms down and "bear hug[ging]" him. Father blamed Mother for the children being scared of him and influencing them against him since they were little.

An investigation revealed an extensive child welfare history involving the family for about a 10-year period from November 2006 through February 2016. Mother did not have any substantiated allegations. Father, however, had numerous physical abuse allegations with some being unfounded, inconclusive, and substantiated. The substantiated allegations against Father were in June 2010 and March 2009. There were several referrals indicating Father had left marks on the children. One referral reported that Father had broken Mother's arm after she gave birth to A.C.

The parents had a custody order which provided for joint legal custody and sole physical custody awarded to Mother. Father had visitation with the children every other

4

weekend. After the recent incident, Mother filed for sole legal and physical custody and to claim the children as dependents on taxes.

On February 28, 2020, CFS filed petitions on behalf of the children pursuant to Welfare and Institutions Code[2] section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (c) (serious emotional damage), and (j) (abuse of sibling), based on Father's recent incident involving A.C., his child welfare history, and the children's symptoms of anxiety and depression requiring treatment by a therapist.

At the March 2, 2020 detention hearing, the juvenile court formally detained the children from Father's care and maintained them in Mother's home. The court found visits by Father to be detrimental to the children and ordered that no visits occur between Father and the children.

CFS recommended that Mother be granted custody of the children, a custody order be issued, and the dependency matter be dismissed. Father continued to deny the allegations and believed Mother was trying to keep him away from the children. He claimed that he had gone to therapy four or five times and that he had taken anger management and parenting classes. The children reported that Mother did not speak negatively about Father, and the social worker noted that Mother "did not say one negative thing about [Father]" during the interview. CFS opined that Father did not appear to accept responsibility for his actions leading to the removal of the children from his care. He blamed the children for their poor attitude towards him and Mother for

_____

[2] All future statutory references are to the Welfare and Institutions Code unless otherwise stated

5

"'poisoning their minds against him.'" CFS noted that although Father had participated in therapy and anger management, he had not demonstrated he benefitted from services. He wanted the children to change to meet his expectations but he was unwilling to change his behaviors for the children.

Letters from the children's therapist indicated that both of the children were diagnosed with depression and anxiety and that their symptoms were related to a poor father-son relationship. Neither A.C. nor E.C., Jr., enjoyed visiting Father because he made them do things they did not want to do and he did not take their feelings into consideration.

On June 24, 2020, CFS filed amended section 300 petitions, which amended the allegations under subdivisions (a) and (b) to allege that Father had physically abused A.C. despite previous services for anger management, and that his failure to treat his anger management issues and continued physical abuse of the children placed them at risk.

On September 17, 2020, CFS informed the court that the children were doing well in the care and custody of Mother. Both children continued to unequivocally say that they did not want to visit Father. A.C. reported he did not like going to visits alone with Father. E.C., Jr., reported he now felt calm that he did not have visits with Father and that he felt tense when he had to visit Father.

The contested jurisdictional/dispositional hearing was held on September 21, 2020. Following Father's testimony, the juvenile court noted its concern that Father had

no insight into his responsibility.  The court explained that Father did not understand or take responsibility that he was the adult and needed to understand and learn how to handle the children.  The court also pointed out that both children indicated that they did not wish to see Father, which had developed over time and not just recently.  The court continued to find that visits were detrimental to the children and advised Father that he could go to family law court and show by way of courses and counseling how he had addressed his order and show a change of circumstances to modify the court order.  The court found the allegations in the amended petition true and discharged the children as dependents of the court.  The court granted sole legal and physical custody of the children to Mother, entered a custody order in the family court file, which provided for no visitation for Father, and dismissed the dependency matter.  This appeal followed.

III

DISCUSSION

Father contends the juvenile court abused its discretion in granting sole legal custody to Mother and denying him visitation.  We disagree.

"Section 362.4 provides that when the juvenile court terminates jurisdiction over a dependent child, and there is a pending family court case, the juvenile court may issue an order determining the custody of, or visitation with, the minor, which order 'shall' become part of the family court file and 'shall continue' unless 'modified' or 'terminated' by that court.  [Citation.]  An order entered pursuant to section 362.4 is commonly referred to as an '"exit"' order."  (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455 (*Cole*

7

*Y.*).)  "When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.'  [Citations.]"  (*In re T.S.* (2020) 52 Cal.App.5th 503, 513, citing *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268 (*Nicholas H.*) and *In re Chantal S.* (1996) 13 Cal.4th 196, 206 (*Chantal S.*).)

The family court that will be responsible for enforcing or modifying the juvenile court's visitation order is equally capable of ensuring that the custody and visitation take place as ordered.  (*Chantal S.*, *supra*, 13 Cal.4th at p. 203.)  A juvenile court terminating dependency jurisdiction and making custody or visitation orders "does so as a court with 'a special responsibility to the child as *parens patriae* and [it] must look to the totality of a child's circumstances when making decisions regarding the child.'  [Citation.]"  (*In re J.T.* (2014) 228 Cal.App.4th 953, 963.)

The juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case.  (*Nicholas H.*, *supra*, 112 Cal.App.4th at p. 265, fn. 4.)  The decision to terminate dependency jurisdiction and to issue custody and visitation orders pursuant to section 362.4 is reviewed for abuse of discretion, and we will not disturb that decision unless "'"the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."'"  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

Father does not challenge the juvenile court's decision awarding sole custody to Mother or terminating dependency jurisdiction.  Rather, he claims the court abused its discretion in issuing the visitation order.  Specifically, citing page 154 of the clerk's

8

transcript, he asserts the court left "the reasons for its order denying [him] any visitation at all completely blank" in violation of California Rules of Court,[3] rule 5.700(b). Father thus claims both he and "any reviewing court will not be able to determine exactly what steps [he] had to take in order to show the requisite 'significant change of circumstances' required by section 302, subdivision (d)."[4]

When a juvenile court orders custody with the nonoffending parent and terminates jurisdiction, the court must prepare and file an exit order (Judicial Council Forms, form JV-200) in accordance with rule 5.700. Rule 5.700(b), (c), and (d) further prescribe the procedures that must be followed for the preparation and transmission of the juvenile court custody order from the juvenile court to the receiving family court and for filing and providing notice to the parties once the order has been received. "'The orders need to provide specific direction to the parents and other parties to facilitate compliance and reduce the potential for conflict.'" (*In re Anna T.* (2020) 55 Cal.App.5th 870, 878 (*Anna T.*).)

In addition, the final custody orders "'also need to provide sufficient detail, and use language familiar to the family law bench and bar, to permit the family court to enforce them if a dispute does arise or to modify or terminate the orders if circumstances

_____

[3] Undesignated rules references are to the California Rules of Court.

[4] Under section 302, subdivision (d), the decision to modify an exit order is within the province of the family court, and the order will be modified only upon a finding of "'significant change of circumstances,'" and that the modification is in "'the best interests of the child.'" A juvenile court therefore does not have authority to condition the family court's modification of the exit order upon a parent's completion of services. (*Cole Y.*, *supra*, 233 Cal.App.4th at p. 1456.)

9

change significantly and modification would be in the best interest of the child. The information included in the juvenile court order must address the circumstances that led to the juvenile court's child custody and parenting time orders to enable a family court to determine whether circumstances have changed to a degree that justifies considering whether the requested modification is in the best interests of the child. The child custody orders need to serve these functions without disclosing juvenile case information that should remain confidential, because juvenile court child custody orders, including attachments, are not themselves confidential. (§ 362.4.)' [Citation.]" (*Anna T*., *supra*, 55 Cal.App.5th at pp. 878-879.)

In this case, contrary to Father's contention, the exit order was not blank. Attached to the Custody Order (form JV-200) is form JV-206 (Reason for No or Supervised Visitation). Form JV-206 specifies that "On September 21, 2020, the Court found that visitation between the minor children and father was detrimental to the children's safety and emotional well-being." Although the statement denying visitation is noted under section "b" pertaining to denial of services, rather than section "a" which involved visitation, form JV-206 is nonetheless clear as to the reasons why visitation was denied to Father. Moreover, the record and the juvenile court's findings at the September 21, 2020 jurisdictional/dispositional hearing clearly explain the reasons for denying Father visitation with his boys. Specifically, the court continued to find that visits were detrimental to the children, noting both boys were in therapy due to their relationship with Father and both boys unequivocally stated they did not want to visit

10

with Father.  The juvenile court did not abuse its discretion in issuing the exit custody order and visitation order.

## IV

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


McKINSTER
Acting P. J.


FIELDS
J.