Filed 5/3/22  In re M.T. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re M.T., a Person Coming Under the Juvenile Court Law. | C095114 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> K.N., <br><br> Defendant and Appellant. | (Super. Ct. No. JD240030) |

K.N., mother of the minor (mother), appeals from the juvenile court's order denying her petition to modify prior orders and terminating her parental rights. (Welf. & Inst. Code, §§ 366.26, 388, 395.)[1] We will affirm the juvenile court's orders.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

## BACKGROUND

The minor, M.T., came to the attention of the Sacramento County Department of Child, Family and Adult Services (Department) in August 2019 when she, along with mother, tested positive for methamphetamine at her birth. Mother, who had a long history of methamphetamine use, admitted she had used methamphetamine the day before giving birth. Mother claimed she used the drug to stay awake and control pain, adding that it was "only a one-time slip, it's not the end of the world. I am allowed to make [a] mistake, I am not perfect."

During the social worker's interview of mother in the hospital, mother became agitated and angry when questioned about a pending dependency case in Yolo County involving the minor's half sibling, H.N. She began to cry and yell at the social worker, clutching the minor to her chest and refusing to allow the social worker to take the child. The minor's father, Michael T. (father), came out of the bathroom in mother's room where he had been hiding. Mother admitted she had a history of drug use and domestic violence but claimed she had stopped using on her own and without treatment in the past and did not need the court's involvement to " 'make me to do anything.' " She also claimed she could provide for the minor while at the same time admitting she was homeless. The social worker required police assistance in order to calm mother down and detain the minor, who was placed in protective custody.

Father was mother's live-in boyfriend and admitted using methamphetamine with mother the day before the minor's birth. He also admitted he had a history of abusing methamphetamine, marijuana, and alcohol, and that he used methamphetamine with and without mother.

On August 19, 2019, the Department filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (j). The petition alleged, pursuant to subdivision (b), that mother failed to protect the minor due to mother's continuing substance abuse issues from which she failed and refused to rehabilitate, as well as

2

mother's history of domestic violence with father. The petition further alleged, pursuant to subdivision (j), that the minor was at risk of abuse or neglect due to mother's abuse of H.N., who was born in December 2009, removed from mother, and in May 2018 declared a dependent of the juvenile court as a result of mother's untreated substance abuse issues and her ongoing and chronic domestic violence with father. The petition also alleged that, in H.N.'s dependency case, mother's reunification services were terminated in June 2019 due to her lack of participation, and the matter was set for a section 366.26 hearing.

On August 20, 2019, the juvenile court ordered the minor detained and ordered the Department to provide the parents with reunification services and visitation.

Prior to the jurisdiction hearing, the Department reported that mother had been using methamphetamine since age 12, she had previously used daily, and her most recent use was the day before the minor was born. Mother stated she previously completed a voluntary substance abuse program in a nearby town and participated in another program in Yolo County, and she intended to complete a substance abuse treatment program in Sacramento County. She provided documentation showing she had tested negative for drugs in July 2019 and twice in August, with a failure to test also in August 2019. She claimed she was compliant with her services in H.N.'s dependency case except for a brief interruption when she moved to Sacramento County. However, she also admitted her services had been terminated in that case after she relapsed three separate times.

The Department confirmed that mother tested positive throughout H.N.'s case and that her reunification services were terminated on June 4, 2019, due to noncompliance. The Department recommended the court bypass mother's reunification services pursuant to section 361.5, subdivisions (b)(10) and (13), also opining it would not be in the minor's best interest to offer reunification services and recommending the court apply section 361.5, subdivision (c).

3

In October 2019, the Department confirmed mother had been "kicked out" of her 90-day inpatient treatment program after being "very argumentative with the staff, yelling during her phone calls, having visitors during non-visiting hours, and not following facility rules." The following month, the Department reported mother had been arrested for domestic violence and battery and was in custody for three days. Father reported he and mother were arguing and mother attacked him.

On November 12, 2019, the Yolo County court terminated mother's parental rights in H.N.'s case, identifying adoption as the permanent plan.

In December 2019, the Department reported mother was not engaged in her alcohol and other drug (AOD) treatment and she declined a treatment opportunity. The AOD counselor reported having to question mother when she tested because she had been caught tampering with her test sample in the past.

As of the Department's February 2020 addendum report, mother was still not participating in drug treatment despite repeatedly being told by her AOD counselor that she needed to go to outpatient or residential treatment. She was inconsistent in her drug testing and was not attending any of her required support meetings. When mother was informed she had been discharged from services in October 2019, she became upset and denied being discharged. The Department re-referred her to parenting and domestic violence classes, but she continued to test positive or refused to test and declined beds offered to her at five different inpatient residential treatment facilities. On February 5, 2020, mother was again discharged from AOD treatment due to her failure to test.

Mother's AOD counselor reported that mother's " 'attitude [was] the worst' " and she blamed everything on everyone else. She was reportedly altering her urine tests by taking baking soda. The counselor observed the parents during a home visit at the paternal grandmother's house and noted the parents appeared to be living together and father appeared to be under the influence.

4

As of June 2020, despite new referrals for substance abuse testing and individual counseling, mother had not attempted to contact service providers, claiming she had transportation issues--an excuse later proven to be false. Mother had been visiting the minor twice weekly but had yet to complete any of her services.

On July 14, 2020, the juvenile court sustained the dependency petition, declared the minor a dependent, continued out-of-home placement, and ordered bypass of mother's reunification services pursuant to section 361.5, subdivision (b)(10) and (13) due to mother's failure to participate in a court-ordered drug treatment plan and termination of mother's services in H.N.'s case.

On December 29, 2020, the court dismissed mother from drug court due to her failure to participate.

The January 2021 prepermanency report stated mother and father continued to live together and engage in domestic violence. While the parents positively engaged with the minor when they attended visits, they were inconsistent in their visits, confirming visits ahead of time and then failing to arrive, or arriving without confirming and demanding visitation. The Department recommended the court terminate father's services and set the matter for a section 366.26 hearing.

*Mother's Section 388 Petition*

On April 3, 2021, mother filed a petition pursuant to section 388 seeking to modify the juvenile court's previous order bypassing her reunification services. She requested the court reinstate her services and alleged changed circumstances in that she had been participating in outpatient treatment since October 2020 and no longer lived with father. She tested two times each month, participated in individual counseling, and was taking an online parenting course. She alleged she actively participated in visits with the minor, and she continued to be actively involved in H.N.'s life despite termination of her parental rights in that case. Mother alleged the requested change was in the minor's best interest because mother had been working on her sobriety and sought services on her

5

own, she was committed to continuing services and "eager to participate and complete" any additional services the Department or the court felt necessary, she and the minor had a bond, she had been visiting the minor consistently and appropriately, and she believed the minor should be given the opportunity to be raised by her own mother.

*Mother's Amended Section 388 Petition and First Hearing*

On April 9, 2021, mother filed an amended section 388 petition alleging she had entered the WellSpace Health outpatient treatment program on November 19, 2020. The juvenile court set the matter for a hearing.

The Department filed a review report confirming its previous recommendations. The Department reported father was still living with the paternal grandmother but only temporarily due to the apartment manager's restraining order against him. Father stated mother was living in her truck and planned to move into an inpatient drug treatment facility once a bed became available. Father was still not engaged in services and the Department confirmed the parents had engaged in domestic violence as recently as March 2021. Mother's drug test results from September 2020 through March 2021 showed two positive tests, several "no-shows," and four negative tests in February and March 2021. Mother was consistently visiting the minor with the exception of several cancelations. The Department continued to recommend termination of father's services given his failure to participate in substance abuse treatment and his continued significant contact with and engagement in domestic violence with mother.

On April 12, 2021, mother withdrew her original and amended petitions without prejudice to refile. After hearing testimony and argument, the court terminated father's services and set a section 366.26 hearing.

*Mother's Renewed Section 388 Petition*

On September 22, 2021, mother filed another section 388 petition; the petition requested that the juvenile court modify its prior orders removing the minor from her care and bypassing her from services. As in her original petition, mother alleged

circumstances had changed because she had been participating in services on her own and she was no longer in a relationship with father. She alleged she graduated from her outpatient treatment program, attended a domestic violence program weekly and was an active participant, and was maintaining her sobriety. Mother alleged she was focused on herself, her recovery, and the minor, with whom she maintained regular visitation and with whom she was "very bonded." She further alleged she was diligently pursuing housing options. Mother alleged the requested change was in the minor's best interest because mother was diligently pursuing services on her own, completed a substance abuse treatment program, and maintained her sobriety. She alleged she was actively engaged in a domestic violence program to keep herself and the minor safe, and she and the minor were bonded and had been having positive and appropriate visits. Finally, mother alleged she maintained contact with H.N. and could offer the minor a safe and loving environment.

The Department filed an addendum report recommending the juvenile court deny mother's section 388 petition, reporting that mother could not articulate what she had learned or how to implement techniques taught in her domestic violence classes despite having finished the program. She was similarly unable to identify what she had learned or what changes she had made after completing her substance abuse treatment program. While mother claimed she was no longer in a relationship with father and she requested separate visits as a requirement of the program in which she was attempting to enroll, mother and father continued to attend some of the visits together.

*Hearing on Mother's Renewed Section 388 Petition/ Section 366.26 Hearing*

Mother's renewed section 388 petition was heard in conjunction with the section 366.26 hearing on September 28, 2021. Mother testified she participated in services on her own, including substance abuse treatment at Strategies for Change. She testified she completed the program in June 2021 and had maintained her sobriety since

7

December 2020. She testified she drug tested twice a month from October 2020 through June 2021, when she stopped testing altogether.

Mother also testified she had participated in and finished a 15-week group counseling program on domestic violence and was signed up for another program. When asked what she learned, mother testified she learned to set boundaries and to acknowledge "the red flag of domestic violence or the onset of domestic violence." However, when asked why she did not take domestic violence classes prior to May 2021, mother said there was "no real reason" and testified she "didn't know about it" until her substance abuse treatment counselor told her about it. Mother denied she was in a romantic relationship with father.

Mother testified she was enrolled in an online parenting class and had completed eight of 15 classes. She believed she was benefitting from the program because "[y]ou can always be a better parent." She testified she would have appropriate housing if the minor were returned to her care, either in a rented room or a transitional shelter. She added that the minor would be able to see and bond with H.N., who was in the care of the maternal aunt. She testified she could provide a safe environment for the minor.

She testified that she consistently visited the minor twice weekly, either with or without father and admitted she requested separate visits from father only because it was a requirement of a program in which she was hoping to participate.

On October 18, 2021, the juvenile court denied mother's section 388 petition, noting mother "tried to turn the corner, but it [was] not enough," and she failed to prove changed circumstances. The court then found the minor adoptable, determined the beneficial parental relationship exception to adoption did not apply, terminated parental rights, and identified adoption as the permanent plan.

Mother timely appealed; the case was fully briefed and assigned to this panel in March 2022. The parties did not request argument.

8

**DISCUSSION**

Mother's sole challenge on appeal is to the juvenile court's denial of her section 388 petition after hearing. She argues the court abused its discretion because she adequately demonstrated changed circumstances and contends granting her petition was in the minor's best interest. We disagree.

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see *In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) We review the denial of a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

The change of circumstances or new evidence alleged in a section 388 petition "must be of such significant nature that it requires a setting aside or modification of the challenged prior order." (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 485; see *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1451.) "A petition [that] alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) The petitioner has the burden of proof by a preponderance of the evidence. (Cal. Rules of Court, rule 5.570(h)(1)(D).) Here, the court considered mother's petition and also held a hearing where it considered testimony and related evidence.

Mother points to the written statement submitted with her petition as well as her testimony at the hearing, showing she had completed a 15-week domestic violence course and was no longer in a relationship with father. She was participating in an online

9

parenting class. She had been clean and sober for seven months. She was participating in recovery meetings, and she was looking for stable housing.

Taking all of this as true, the juvenile court found it insufficient to show changed circumstances; it appears to us that this conclusion was well within the court's discretion. As we have described in detail *ante*, the minor's removal was integral to mother's long history of methamphetamine use and domestic violence, the same issues that precipitated H.N.'s removal the year prior.

Mother admitted she had used methamphetamine from age 12 and was a regular user despite periods of treatment and completion of a drug rehabilitation program; indeed, the minor was born with the drug in her system and mother admitted use mere days before the minor's birth. Mother failed to engage in reunification services in H.N.'s case and tested positive for methamphetamine throughout, resulting in termination of services and parental rights.

Similarly, here although mother was bypassed at disposition, prior to that time she was afforded multiple opportunities for services and failed to engage. She was expelled from her inpatient treatment program in October 2019, declined multiple opportunities to engage in AOD treatment, tampered with her urine samples, and was ultimately discharged in February 2020 for not participating, not attending required support meetings, and either testing positive or refusing to test at all. In June 2020, despite new referrals for services, mother failed to contact service providers and lied about having transportation issues. She was dismissed from drug court five months after she was bypassed; her dismissal was for failure to participate. She tested positive in September and December 2020, failed to test in October and November 2020 and January 2021, and stopped testing in June 2021. Although she professed sobriety for the seven months preceding the hearing, her sobriety was brief and tenuous against the backdrop of her lengthy and ongoing substance abuse history both before and during the instant proceedings and H.N.'s case.

10

Similarly, there was little evidence of changed circumstances with respect to mother's history of domestic violence. Just three months after the minor's removal in August 2019 in part due to mother's ongoing domestic violence with father, mother was arrested for another incident of domestic violence. In August 2020 and October 2020, police responded to reports of domestic violence between the parents, and mother and father engaged in domestic violence again in March 2021. Mother eventually participated in domestic violence classes, but she was unable to identify past instances of domestic violence or articulate what she had learned or how she would implement that knowledge to keep herself and the minor safe. And while she claimed she was no longer in a relationship with father, the two attended the majority of visits together, a practice that temporarily changed only when mother requested separate visits to appease a program in which she hoped to enroll.

Mother did not meet her burden to demonstrate changed circumstances, showing at best only that her circumstances were beginning to change. Thus, we need not address the second prong of section 388, which required a showing that return of the minor to mother or reinstatement of mother's services was in the minor's best interest. However, we note that there is even less evidence of this prong. Mother's briefing offers only that: "In terms of [minor's] best interest, mother advised the juvenile court she was maintaining visitation" and that "[s]he and [minor]were 'very bonded to each other' " and concludes cursorily that: "Losing her relationship with mother will necessarily cause trauma to [the minor]." But there is no evidence that the minor, removed at birth, would see *the minor's* best interests served by return to mother or by the Department's provision of more services to mother. Indeed, the evidence is to the contrary. The juvenile court did not abuse its discretion in denying mother's section 388 petition.

11

## DISPOSITION

The juvenile court's orders are affirmed.

                                                                /s/
                                                            Duarte, J.

We concur:

/s/
Mauro, Acting P. J.

/s/
Earl, J.