Filed 6/20/23 In re Z.E. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Z.E., a Person Coming Under the Juvenile Court Law. | B320946 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 19LJJP00142 |
| Plaintiff and Respondent, | |
| v. | |
| A.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Donald A. Buddle Jr., Judge. Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

The juvenile court issued an order restricting A.M.'s (mother's) custody and visitation of her child Z.E. On appeal, mother contends the court's order was an abuse of discretion. The Department of Children and Family Services (Department) disagrees, arguing the order was reasonable and in furtherance of Z.E.'s best interests given mother's history of abusing drugs, lack of progress in her parenting skills, and other inappropriate behavior, including sending Z.E.'s father threatening messages. As discussed in greater detail below, we agree with the Department and affirm.

# BACKGROUND

On March 15, 2021, the juvenile court sustained a Welfare and Institutions Code[1] section 300 petition filed on behalf of newborn Z.E. In sustaining the petition, the court found mother posed a substantial risk of serious physical harm to Z.E. due to her history of abusing substances including methamphetamine, amphetamine, cocaine, and marijuana, as well as using drugs while pregnant.

At the disposition hearing on March 23, 2021, the juvenile court declared Z.E. a dependent, removed him from parental custody, ordered him suitably placed, granted each parent three monitored three-hour visits per week, ordered reunification services for the child's presumed father (father), and bypassed reunification services for mother.

In March 2021, mother enrolled in a three-month inpatient treatment program. While in treatment, mother's three weekly

---

1    All undesignated statutory references are to this code.

visits with Z.E. were scheduled as virtual visits. The foster parents noted mother's virtual calls were initially inconsistent, then stopped altogether when mother was discharged from the treatment program in June 2021.

The Department later reported mother had been participating, and making progress, in services. Because of mother's progress, the Department liberalized her visits with Z.E., allowing two to four-hour unmonitored visits at the maternal grandmother's home.

In September 2021, the juvenile court terminated the suitable placement order, released Z.E. to the custody of father, ordered father to participate in family maintenance services, and granted mother monitored visits.

In February 2022, the Department reported father had completed all his court-ordered services and was caring for the child, attending to all his medical needs, and providing him a safe home. Z.E. had made remarkable medical and developmental improvements, and the social worker observed a strong bond between the child and father.

Mother was having weekly monitored visitation with Z.E. but had not been consistent in confirming visits beforehand, resulting in many canceled visits. The problem continued despite the social worker advising mother to confirm visits 24 hours in advance. The social worker observed a visit and noted mother engaged and played well with Z.E., keeping the child's attention. On one occasion, mother had to be admonished not to bring her oldest child to visits with Z.E. because the oldest child had not been approved for visits.

The Department recommended the juvenile court terminate jurisdiction and grant father sole legal and sole physical custody

of Z.E., with mother having monitored visits. The Department noted father had shown the skills, knowledge, and motivation to properly care for Z.E., whereas mother had a history of abusing drugs, leading to the child testing positive for marijuana at birth.

In March 2022, the Department reported father had disclosed that the maternal grandmother had been contacting him for a long time telling him he was not a fit parent and Z.E. should be given to the maternal side of the family. He said that around September 2021, the maternal grandmother started having mother text him stating that she "knows an administrator" at the Department and "can find out anything" about him. Father added that the maternal grandmother said she would make sure he did not keep Z.E. The Department noted father appeared to be taking excellent care of Z.E.

In a report filed April 1, 2022, the Department provided a summary of the case with respect to mother. In addition to reiterating the details described above, the summary noted mother went several months after her treatment program without contacting Z.E. or the Department. The summary also noted that during a visit in December 2021, a social worker noted mother mostly behaved appropriately with Z.E., but did not seem to know how to properly clean Z.E. when changing his diaper.

The report also noted that sometime around September 2021, the maternal grandmother, who had been threatening father and telling him he was not a fit parent, started having mother text him with threats as well. Later, in December 2021, mother told the Department the court had terminated her reunification services without her knowledge, and she was ready to take Z.E. back. Mother then blamed the social worker for having lost custody of one of mother's other children, and

subsequently sent the social worker rude text messages. On January 3, 2022, mother did not confirm a visit until the morning of the visit, which resulted in the visit being canceled; mother then missed two more visits. In February 2022, father informed the Department he had received a "rude call" from mother threatening to report him. At a later visit, while the social worker was holding Z.E. waiting for mother to arrive, a person who identified herself as mother's sister approached the social worker, asked to see the child, and referenced how the child would return to mother. The social worker advised the person that she was not authorized to attend the visit.

The Department assessed that mother continued to struggle with following visitation rules, taking accountability for her actions, and progressing in her parenting skills. The Department was also concerned about the maternal grandmother's intervention in the case and verbal threats to father. The Department continued to recommend that jurisdiction be terminated, with father receiving sole legal and physical custody of Z.E., and mother having monitored visitation.

At a section 364 hearing on April 13, 2022, the Department entered its reports into evidence, and mother entered into evidence letters indicating she had completed a substance abuse program and a parenting course on June 14, 2021. Counsel for the Department and counsel for Z.E. objected to mother's evidence, arguing the letters were not authenticated, timely, or consistent with one another. The juvenile court noted the letters were seemingly inconsistent and stated it would admit mother's evidence, giving it the weight it deserved.

Mother objected to the Department's custody recommendation, noted she had completed some services, and

asked for joint legal and joint physical custody or unmonitored visits.

The juvenile court awarded father sole legal and sole physical custody of Z.E., granted mother monitored visitation, specified that the maternal grandmother was not to monitor mother's visits, and terminated jurisdiction pending receipt of a juvenile custody order.

The juvenile court received the custody order on April 15, 2022 and terminated jurisdiction.

## DISCUSSION

When a juvenile court terminates jurisdiction over a minor, it is statutorily permitted to issue custody and visitation orders. (§ 362.4, subd. (a).)[2] Such orders are commonly referred to as "exit orders." (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455.) In issuing exit orders, juvenile courts look to the totality of the circumstances to assess what outcome is in the child's best interests. (*In re J.T.* (2014) 228 Cal.App.4th 953, 963-964.)

---

2    Section 362.4, subdivision (a) provides: "If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court prior to the minor's attainment of the age of 18 years, and proceedings for dissolution of marriage, for nullity of marriage, or for legal separation, of the minor's parents, or proceedings to establish the paternity of the minor child brought under the Uniform Parentage Act, Part 3 (commencing with Section 7600) of Division 12 of the Family Code, are pending in the superior court of any county, or an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue a protective order as provided for in Section 213.5 or as defined in Section 6218 of the Family Code, and an order determining the custody of, or visitation with, the child."

6

Juvenile courts have broad discretion in making such assessments. A reviewing court will not overturn an exit order unless it is arbitrary, capricious, or absurd. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

Applying these principles, we conclude the juvenile court's custody and visitation order was not an abuse of discretion. As discussed above, the record reflects that mother has long struggled with abusing drugs, used drugs while pregnant with Z.E., did not progress with her parenting skills, did not assume responsibility for her actions that interfered with her parenting, and sent Z.E.'s father threatening messages. Given these circumstances, the juvenile court's custody and visitation order was not arbitrary, absurd, or unreasonable.

## DISPOSITION

The custody and supervision order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, Acting P. J.

We concur:

MORI, J.

ZUKIN, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.