Filed 10/11/24  In re A.F. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | B328560 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.F.,<br><br>        Defendant and Appellant;<br><br>I.T.,<br><br>        Defendant and Respondent. | Los Angeles County Super. Ct. No. 20CCJP01125A |

APPEAL from an order of the Superior Court of Los Angeles County.  Gabriela H. Shapiro, Commissioner.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Respondent.

———————————

Father, C.F., appeals the juvenile court's order granting him custody over his minor daughter, A.F., on the limited basis that the order may require him to share the costs of a professional monitor for A.F.'s visitation with mother I.T. at the correctional facility where mother is currently incarcerated. Finding no abuse of discretion, we affirm.

## BACKGROUND

The facts relevant to the disposition of this appeal are limited. Mother and father were in a dating relationship for a year or two. When mother turned 18, she moved in with father and his family. Shortly thereafter, she became pregnant. About a month into her pregnancy, she ended her relationship with father. During her pregnancy, they had at least one altercation that involved physical violence. She gave birth to A.F. in June 2019. Five months later, mother was arrested for robbery and detained in custody. She has been incarcerated ever since and is first eligible for parole in September 2026.

Maternal grandparents became A.F.'s primary caretakers. Maternal grandparents held a dim view of father, and they did not get along. Issues over custody arose. Maternal grandmother commenced guardianship proceedings.

The Los Angeles County Department of Children and Family Services (Department) received a referral about A.F. in January 2020. The following month, A.F. was detained from the parents and placed with maternal grandparents. Father's visitation was ordered monitored. The juvenile court later sustained a petition against parents, ordered A.F. removed, and ordered services for father.

Despite initially resisting the Department's intervention, father came to embrace his services. In September 2022, the

2

juvenile court found his progress had been substantial and returned A.F. to his care, provided he complied with orders and resided with paternal grandparents.  Maternal grandparents were unhappy to lose custody of A.F.  Despite a Department social worker telling her a placement termination letter was forthcoming, maternal grandmother claimed she still had caregiver rights over A.F. until receiving such a letter and went to paternal grandparents' home to assert those "rights."  Her conduct there reportedly caused paternal grandfather to suffer a heart attack.  After this incident, father did not feel safe allowing A.F. to have visitation with her maternal relatives.

In March 2023, the Department reported father was successfully caring for A.F. in paternal grandparents' home.  He had also complied with and completed his case plan.  However, mother being incarcerated and the relationship between father and maternal grandparents complicated A.F.'s visitation with mother.  While A.F. was placed with maternal grandparents, maternal grandmother had acted as monitor.  After A.F. was returned to father, father monitored and paid for phone calls to mother to facilitate visitation, even though he was barred from serving as a monitor given parents' history of domestic violence.

The Department recommended, and the juvenile court agreed, that jurisdiction over A.F. should be terminated, and father given sole legal and physical custody.  At the hearing, the court heard argument about the terms of A.F.'s visitation with mother.  Mother's counsel expressed concern that father would not voluntarily facilitate visitation with mother, claiming "if we are to leave this visitation to father and father alone, father is not going to allow mother's visits."  These concerns may have

been based on father's reluctance to allow A.F. visits with maternal relatives due to their treatment of him and his family.

The court agreed with father's and A.F.'s counsel that, given her acrimonious history with father, maternal grandmother could not monitor visits. In contrast, it found paternal grandparents suitable monitors. It noted they were willing to monitor virtual and telephonic visits between A.F. and mother but no one was identified as a willing monitor for in-person visits at mother's correctional facility. The court's custody order provided: "[M]other is to have monitored visits in person one time per month and telephonic/virtual visits one time per week minimum. Monitor to be mutually agreed upon, paternal grandparents, chosen by father, or paid professional with costs to be incurred by both parents." It so ordered despite counsel for each parent asserting their respective clients lack the financial means to pay a professional monitor.

Father timely appealed.

## DISCUSSION

Father's appeal concerns only the portion of the custody order requiring him to share in the cost of a professional monitor, if necessary, for A.F.'s visitation with mother.

Welfare and Institutions Code section 362.4, subdivision (a) authorizes a juvenile court to issue family law orders governing custody or visitation when terminating jurisdiction over a dependent child. (*Ibid*.) "An order entered pursuant to section 362.4 is commonly referred to as an ' "exit" ' order." (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455.)

In fashioning an exit order, " 'the court's focus and primary consideration must always be the best interests of the child.' " (*In re T.S.* (2020) 52 Cal.App.5th 503, 513.) In ascertaining those

4

interests, the court " 'must look to the totality of a child's circumstances when making decisions regarding the child.' " (*In re J.T.* (2014) 228 Cal.App.4th 953, 963.)  Juvenile courts exercise "broad discretion" in fashioning exit orders.  (See *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.)

Although they constitute a final judgment of the juvenile court, exit orders are subject to modification or termination in a later family law proceeding.  (Welf. & Inst. Code, §§ 302, subd. (d), 362.4, subd. (b).)

We review exit orders issued pursuant to Welfare and Institutions Code section 362.4 for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301.)  We will not disturb a juvenile court's decision unless it " ' "exceed[s] the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' "  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

As a preliminary matter, each parent mischaracterizes the exit order.  Father says the order "require[s] [f]ather to incur the cost of mother's professional visitation monitor . . . ."  But the order provides three alternatives for monitoring visits, only one of which is a paid professional monitor with costs split between the parents.  Mother claims there are only two alternatives to a paid monitor:  "arranging for supervision by the paternal grandparents or by a mutually agreed upon individual."  This is wrong, too.  The exit order provides visitation monitoring may also be performed by an individual "chosen by father."  Mother justifies arguing this alternative out of the order by calling it "somewhat confusing."  The words are plain.  We see no basis for confusion.

Nor do we see any basis for finding the juvenile court abused its discretion in ordering parents share the cost of a professional monitor as a last resort if no other alternatives are available. The court specifically included this provision so there would be "some sort of parity" regarding payment. Though father reads this as unfairly burdening him with costs caused by mother's circumstances, we interpret it differently. The court gave parents the opportunity to select a mutually agreed monitor. The cost sharing provision gives parents the incentive to come to a reasonable agreement on a volunteer monitor. But even mother's failure to cooperate does not force father to bear a professional monitor's costs. He is authorized under the exit order to choose a monitor without mother's agreement.

There is no doubt the exit order imposes on father some burden occasioned by mother's ongoing need to have visits monitored—a burden that is both a product of, and heightened by, her being incarcerated. Father must consent to a monitor suggested by mother, obtain a personal favor from a volunteer (including a paternal grandparent), or share the cost of a professional. But father cites no authority that he cannot be so burdened. Indeed, it is difficult to envision any exit order that does not impose at least some burden on the custodial parent to facilitate visitation.

Finally, as noted above, the north star of exit orders is the child's best interest. Here, the juvenile court determined A.F.'s best interest was to have visitation with mother. The terms it imposed governing that visitation are not arbitrary, capricious, or patently absurd. Rather, they were fashioned after consideration of the parents' circumstances and the history of the case. Contrary to father's claim, they reflect no intent to "punish

[f]ather for mother's issues." Rather, they reflect the court's intention that A.F. have meaningful contact with mother. The burden it imposed on father is in service of this interest.

To the extent the exit order proves unworkable, parents have the right to seek a modification in the family court. (Welf. & Inst. Code, § 362.4.)

## DISPOSITION

The juvenile court's custody order is affirmed.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.

7