Filed 7/29/25  In re J.A. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.A., a Person Coming Under the Juvenile Court Law. | C103241 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJDDP20230000454) |
| Plaintiff and Respondent, | |
| v. | |
| J.A., | |
| Defendant and Appellant. | |

Father of the minor appeals from the juvenile court's orders denying his petition for modification and terminating parental rights, freeing the minor for adoption.  (Welf. & Inst. Code,[1] §§ 366.26, 388, 395.)  We affirm.

BACKGROUND

The newborn minor came to the attention of the San Joaquin County Human Services Agency (Agency) in November 2023.  The minor tested positive for

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

amphetamine and fentanyl at birth, having been exposed by mother who had a history of substance abuse and who also tested positive at the minor's birth. After a difficult recovery in the neonatal intensive care unit, the minor was removed pursuant to a protective custody order and placed with his maternal aunt and uncle. The Agency filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (j). The petition alleged that mother and father each lived a transient lifestyle and neither had stable, suitable housing for the minor. Both parents had substance abuse issues and criminal histories. Father's history of substance abuse and criminal behavior directly impaired his ability to supervise and protect the minor, placing the minor at substantial risk of abuse or neglect.

On February 16, 2024, the juvenile court sustained the allegations and ordered the minor removed from both parents. The court made visitation orders and ordered both parents to participate in drug court.

At the outset of the dependency proceedings, it was determined that maternal great-grandmother D.G. was a registered member of the Seminole Nation of Oklahoma Tribe. In early 2024, the Agency received notice from the Seminole Nation of Oklahoma Tribe that the minor was eligible for membership in the Tribe through the maternal great-grandmother. In June 2024, the Agency searched for potential family members. Three of father's relatives were located and sent ICWA-020 forms. In October 2024, the ICWA-020 forms intended for all three paternal relatives were returned to sender. Two months later, qualified ICWA expert witness Richard England submitted his report stating the minor was connected to the Seminole Nation of Oklahoma Tribe and the minor's current placement with the maternal aunt and uncle was in his best interest as there were no other relatives or tribal placements available.

In July 2024, the Agency reported that the minor was doing well in his placement. The report identified the permanent plan as adoption by the aunt and uncle. According to the report, father was transient and unemployed and struggling to maintain consistent

communication with the social worker. Neither parent attended the April 2024 child and family team meeting in which one of the topics of discussion was the parents' lack of interaction with the Agency, the service providers, and the ICWA representative. Father's case plan consisted of parenting education, individual counseling, and substance abuse treatment. As of the date of the report, father had not participated in any portion of his case plan. The social worker's attempts to meet with father in person to discuss the case plan were unsuccessful.

The Agency reported that, between January and June 2024, father's supervised visits with the minor were inconsistent, with numerous instances when he failed to show or failed to timely confirm the visit as required. When visits did occur, they reportedly went well (father was attentive to the minor, showed proper handling techniques when feeding, burping, and holding the minor, and played with and entertained the minor), but father had not transitioned to unsupervised visits due to his inconsistent attendance, lack of communication with the social worker, and lack of involvement in his case plan. As a result of father's lack of engagement in his case plan, the Agency recommended the court terminate his reunification services.

On July 17, 2024, based on the Agency's recommendations, the juvenile court terminated both parents' reunification services, reduced their visits to once per month, and set the matter for a section 366.26 hearing.

In November 2024, the Agency reported that father had yet to participate in any of his case plan services. His visits were reduced to a once per month one and one-half hour supervised visit to be conducted after mother's visit and the siblings' visit. The minor was flourishing in the care of the maternal aunt and uncle, who were committed to adopting him. The Agency recommended terminating parental rights with a permanent plan of adoption by the aunt and uncle.

On November 21, 2024, father filed a section 388 petition seeking to modify the juvenile court's previous order by reinstating reunification services for six months.

3

Father argued that, despite the court's termination of his reunification services, he completed an anger management program, a men's wellness group, individual therapy, and drug and alcohol treatment, and he participated in regular visitation with the minor. He further argued the request was in the minor's best interest because the minor "needs his father in his life especially now that his father has completed the programs necessary to be a better parent," and severing their bond would cause current and future harm to the minor. Attached to father's petition were certificates of completion for an anger management program and a men's wellness group, notes and evaluations from father's psychiatry provider, and drug test results for five days between September 5, 2024 and November 7, 2024.

In January 2025, the Agency reported that father completed his individual counseling sessions and inpatient treatment, was participating in substance abuse rehabilitation and outpatient treatment, and was living in a sober living environment. He was engaged in parenting education and was complying with probation. He was also participating in monthly supervised visits with the minor. Father attended the child and family team meeting on October 11, 2024. He stated he wanted to reunify with the minor and complete his case plan voluntarily. Father learned from mother that he was the father of baby girl H. born in November 2024.

Father's monthly supervised visits with the minor were increased by one-half hour. The minor reportedly cried during the majority of the visits, but father comforted him by holding him, speaking gently to him, hugging him, and kissing him on the head. Father pushed the minor in a stroller to sooth his crying.

Meanwhile, the minor continued to thrive with the maternal aunt and uncle and was "well attached and bonded" to them. Baby girl H. was immediately removed from mother and placed in the caretakers' home with the minor. The caretakers subscribed to the Seminole Nation YouTube channel and watched videos and read materials related to the Seminole Nation. They were meeting the minor's needs and were committed to

4

adopting him. The Agency continued to recommend a concurrent plan of adoption with the maternal aunt and uncle.

The contested section 366.26 hearing commenced on February 19, 2025. First, the juvenile court summarily denied father's section 388 petition, finding there was an insufficient showing to warrant an evidentiary hearing. The court noted as follows: "Even though you [father] were doing fine for the last few months, I commend you for that, you're at the earliest possible stage of making substantial change. [¶] And that's based on a lot of factors: The history, being in prison, continuing drug test up until your last incarceration. I just don't believe, at this point, that things are going to happen. We're dealing with a one-year-old child. So, unfortunately, at this point, I am going to deny the request."

Turning to the issue of permanency, the Agency argued that the minor was in the most appropriate placement despite it not being an ICWA preferred relative placement, noting the ICWA expert witness's opinion that there was good cause to deviate from the ICWA preferred placement due to the lack of available placements and the specific needs of the minor. Father argued it would be detrimental to the minor to terminate parental rights because the minor could not be a part of his biological family and the minor's bond with father would be severed.

After considering the Agency's section 366.26 report, the ICWA expert witness's report, father's testimony, and the parties' arguments, the juvenile court found father's "minimal" contact with the minor was not sufficient to demonstrate a bonded relationship with the minor. The court further found that the ICWA expert's report was sufficient to show the Agency exercised due diligence and active efforts to provide remedial and rehabilitative programs designed to prevent the breakup of the minor's Indian family. The court also found that the minor's current placement was "the most appropriate, even though it may not be ideal," noting the maternal aunt and uncle were actively involved in learning more about the Indian heritage and were willing to incorporate that into the

5

minor's upbringing.  Finding continued custody by the parents was likely to result in serious emotional or physical harm to the minor, the court concluded there was "good cause to deviate from the standard recommendations of the ICWA expert," terminated parental rights, and ordered a permanent plan of adoption.

DISCUSSION

I

*Denial of Section 388 Petition*

Father contends the juvenile court abused its discretion when it denied his section 388 petition for additional reunification services without an evidentiary hearing. He claims the court failed to consider that he completed his case plan, provided proof of sobriety, and maintained regular visits with the minor.  He further claims the court failed to apply the ICWA placement preference and the higher burden of active efforts to reunify the minor, an Indian child, with his family.  In any event, he claims that failure to allow him an evidentiary hearing violated his right to freedom of speech and due process under the First and Fourteenth Amendments to the United States Constitution.  Father's claims lack merit.

To petition to change or modify a juvenile court order under section 388, a party must factually allege changed circumstances or new evidence to justify the requested order and that the requested order would serve the minor's best interests.  (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.)  The petitioner has the burden of proof on both points by a preponderance of the evidence.  (Cal. Rules of Court, rule 5.570(h)(1)(D); further rule references are to the California Rules of Court.)

In deciding whether a parent has met his burden under section 388, the juvenile court must consider such factors as the seriousness of the problem that led to the dependency; the reasons for the continuation of the problem; the degree to which the problem may be and has been removed or ameliorated; and the strength of the relative

6

bonds between the dependent child and the child's parents or caretakers. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1229.) This list is not exhaustive. (*Ibid.*)

The child's best interests "are not to further delay permanency and stability in favor of rewarding" the parent for his "hard work and efforts to reunify." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.) "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, disapproved on other grounds in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.) The juvenile court must liberally construe the petition in favor of its sufficiency. (Rule 5.570(a).) Nonetheless, if the juvenile court finds that even so construed the petition fails to make a prima facie case as to either or both tests under section 388, the court may deny the petition without an evidentiary hearing. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see rule 5.570(d).) We review the denial of a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

With respect to the first prong, father's petition alleged he completed his case plan services and participated in regular visits with the minor, supported by certificates of completion, drug test results, and his therapist's evaluations and notes attesting to his progress. Father completed those case plan services only several months before the section 366.26 hearing and completed his inpatient substance abuse treatment just two months before the hearing. At the time of the hearing, father was living in a sober living environment but was still participating in substance abuse rehabilitation and outpatient treatment. The juvenile court denied father's petition on the grounds that father was "at the earliest possible stage of making substantial change" and the court was doubtful that

"things are going to happen." On appeal, father argues that the ICWA expert witness's report failed to mention his case plan progress, his sobriety, his regular visitation, and his desire to reunify with the minor. Yet all such information was before the juvenile court via his section 388 petition. Father also points to facts in the Agency's reports and argues if he had been permitted to testify at an evidentiary hearing, the court would have reached a different conclusion. But the Agency's reports were before the court and were considered by the court along with father's petition. Based on that information, the court found father was too early in the process to have made substantial change, particularly given father's substance abuse and criminal background and the minor's tender age. The juvenile court properly exercised its discretion.

With respect to the second prong, father argued six additional months of reunification services were in the minor's best interest because the minor "needs his father in his life especially now that his father has completed the programs necessary to be a better parent," and severing the bond between them would cause the minor harm. The juvenile court noted father was "at the earlier possible stage of making substantial change" and added, "I just don't believe, at this point, that things are going to happen. We're dealing with a one-year-old child." Section 361.5, subdivision (a)(1) provides that when, as here, a child is under the age of three at the time of initial removal from that child's parent, reunification services for that child "shall be provided for a period of 6 months . . . but no longer than 12 months from the date the child entered foster care . . . ." (§ 361.5, subd. (a)(1)(B).) The minor was removed on November 21, 2023. Father's reunification services were terminated eight months after the minor's removal. While father eventually completed his services on his own, he had done so only in the recent past and was, in the words of the juvenile court, at "the earliest possible stage" of substantial change. Meanwhile, the minor was thriving with his maternal aunt and uncle, with whom he had been placed from the start. Neither father's recent *changing* circumstances nor his *statements* that the minor needed father in his life and would be

harmed if their bond were severed were sufficient to meet either prong of section 388. Father did not sufficiently allege *facts* showing the proposed modification may be in the minor's best interests. The juvenile court was therefore within its discretion to summarily deny father's section 388 petition.

Finally, we reject father's argument that the juvenile court's summary denial of his section 388 petition denied him his right to freedom of speech and due process under the First and Fourteenth Amendments to the United States Constitution. Father's argument rests on the premise that his prima facie case was "not disputed." As discussed above, the juvenile court found that father did not meet his prima facie burden. We concluded the juvenile court acted within its discretion in so finding. As father did not make a prima facie showing on his section 388 petition, there was no due process violation in denying the petition without an evidentiary hearing. (See *In re Heather P.* (1989) 209 Cal.App.3d 886, 891; see also *In re Jeremy W.*, *supra*, 3 Cal.App.4th at pp. 1413-1414.)

II

*ICWA*

Father contends the juvenile court failed to comply with the provisions of the ICWA when it neglected to obtain input from the tribal representative and to consider the preferred permanent plan of tribal customary adoption. Father forfeited his claim on appeal.

" 'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture . . . applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings. [Citations.]' [Citation.] A party may not assert theories on appeal which were not raised in the trial court." (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686.) Father failed to raise any claim, or lodge an objection, regarding input from the tribal representative or application of the permanent plan of tribal customary adoption in the juvenile court. His claim is therefore forfeited.

9

# DISPOSITION

The juvenile court's orders are affirmed.

<br>

　　　　　　　　　　　　　　　　　　　　　/s/　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　MESIWALA, J.

<br>

We concur:

<br>

　/s/　　　　　　　　　　　　　
HULL, Acting P. J.

<br>

　/s/　　　　　　　　　　　　　
ROBIE, J.